UNITED SERVICES AUTOMOBILE ASS'N
v. HARMAN et al.

No. 10944.

Court of Civil Appeals of Texas.
San Antonio.

April 30, 1941.

Rehearing Denied May 28, 1941.

610

Trueheart, McMillan & Russell and Wier & Wier, all of San Antonio, for appellant.

George Clark, of Waco, Brooks, Napier, Brown & Matthews, of San Antonio, and John Fisher, Jr., of Waco, for appellees.

MURRAY, Justice.

This suit is the consolidation of two suits. Katherine Harman filed cause No. B–91903, and Elizabeth Amend filed cause No. B–91904, in the 73rd District Court of Bexar County. These two suits were consolidated and tried together under cause No. B–91903. No questions are raised with reference to the consolidation, and the suits may be hereafter treated as though only one suit, covering both causes of action, had been filed.

After these suits were filed, Katherine Harman married George W. Martinson, who joined her pro forma in the suit, and Elizabeth Amend married Robert T. Keegan, who also joined her pro forma in her suit.

These suits were instituted by Katherine Harman and Elizabeth Amend against United Services Automobile Association, a private corporation, seeking to recover upon judgments previously recovered by them in the State of Maryland against Oliver Lawther (sometimes spelled Lowther); the Harman judgment being in the sum of $7,000, and the Amend judgment being in the sum of $6,800. The judgments were for personal injuries sustained by plaintiffs when the automobile in which they were riding collided with an automobile owned by Lieutenant Daniel Parker and driven by Oliver Lawther. The collision occurred in the City of Baltimore, State of Maryland, and the suits in Texas were brought against the United Services Automobile Association upon the ground that it was the carrier of the public liability insurance covering the Parker automobile.

The consolidated cause was transferred to the 45th District Court of Bexar County, where a jury trial was had, and, upon the findings of the jury, judgment was entered in favor of the plaintiffs for the full amount sued for, and from this judgment the United Services Automobile Association has prosecuted this appeal.

Appellant, United Services Automobile Association, presents two main contentions: first, that legal service was not had upon Oliver Lawther in the original suits in the State of Maryland, and that therefore the judgments obtained against him by default were void, and, second, that the court erred in not quashing the deposition of Oliver Lawther.

The facts bearing upon the first contention are as follows: Lieutenant Daniel Parker and Private Oliver Lawther were both in the military service of the United States and stationed at Fort Hoyle, a military reservation of the United States, located near the City of Baltimore, in the State of Maryland. On the night of April 11, 1938, Oliver Lawther, accompanied by a friend of his, drove Lieutenant Parker's automobile from the military reservation to the City of Baltimore, a distance of between twenty and thirty miles, upon a mission strictly for his own pleasure and upon said trip was in no way engaged in any mission in which Lieutenant Parker was concerned. In returning from Baltimore to Fort Hoyle, Lawther had a collision with another automobile in which Katherine Harman and Elizabeth Amend were riding, and as a result of this collision both of these ladies sustained personal injuries, and brought suits in a court of general jurisdiction in the State of Maryland against Lieutenant Parker and Private Lawther. They were unable to establish liability against Lieutenant Parker, but recovered judgment by default against Oliver Lawther. The United Services Automobile Association appeared and defended the suits in the court in Maryland, insofar as Lieutenant Parker was concerned, but declined to defend Oliver Lawther, upon the ground that Lawther was using the automobile at the time of the collision without the consent of Lieutenant Parker. Under the extended insurance clause of the policy, the automobile was covered when being driven by any one with Lieutenant Parker's consent, but not otherwise. Service was had upon Oliver Lawther, under provision of the statutes of the State of Maryland (Code Supp.1935, Art. 56, § 190 A), providing in effect that where a nonresident of the State of Maryland was involved in an automobile collision, while using the highways of that State, service could be had against such nonresident person by

serving the Secretary of State of Maryland.

The contention is made by appellant that Oliver Lawther, being stationed and having his place of abode at Fort Hoyle, within the boundaries of the State of Maryland, prior to the time of the collision and continuing thereafter until some time subsequent to the filing of the suits in the State of Maryland, was not in fact such a nonresident citizen of the State of Maryland as was referred to in the Code with reference to substitute service, and that, therefore, such service upon Oliver Lawther, under the circumstances, was void, and in like manner the default judgments were also void. Oliver Lawther had enlisted as a soldier in the United States Army while his domicile and residence was at Big Spring, Texas, and he was assigned to duty at Fort Clark, near El Paso, Texas, where he became orderly for Lieutenant Daniel Parker. It was his duty to take care of Lieutenant Parker's automobile, his horse and his quarters. He often drove Lieutenant Parker's automobile, with the Lieutenant's consent. Both Lieutenant Parker and Lawther were transferred, pursuant to military orders, to Fort Hoyle, where Private Lawther continued to be the orderly of Lieutenant Parker. Lawther slept at the barracks at Fort Hoyle and made no attempt to establish any place of abode in the State of Maryland, other than the barracks upon the military reservation. Some time after the collision and after the suits had been tried, Lawther was transferred from Fort Hoyle, pursuant to further military orders, to another Fort outside of the State of Maryland.

█ Under these facts we cannot agree with the contention of appellant that Lawther was a resident of the State of Maryland, and therefore not such a person as might be cited by substitute service. The statute of Maryland, Article 56, § 190A, which provides for substitute service, it is true, does not use the word domicile, but resident. However, before Lawther could be classified as a resident of the State of Maryland, regardless of whether the word resident is used as meaning domicile, or in a more liberal sense, there would have to be facts and circumstances tending to show that Lawther intended to establish his residence, at least for the time being, in the State of Maryland. A person's residence is ordinarily determined by his intention, coupled with overt acts evidencing such intention. Lawther was an unmarried man. He went to Maryland not upon his own volition, but strictly in obedience to military orders. When he arrived in Fort Hoyle, he did not evidence by any acts an intention to there establish a residence of any kind. He bought no property, neither did he rent any. His place of abode was in the barracks on the military reservation furnished him by the Government. If he had received orders the next day, or the next month, transferring him to another Fort, he no doubt stood ready to obey such order. The military reservation upon which Lowther had his place of abode was not territory belonging to the State of Maryland, but was territory which had been ceded to the United States Government. It is generally said that a single man's residence is where he usually sleeps at night. Under the facts in this case, Lawther did not usually sleep at night in any territory belonging to the State of Maryland, but upon a military reservation under the jurisdiction of the Federal Government. It is true that when the State of Maryland ceded to the Federal Government the ground upon which Fort Hoyle was established, it reserved the right to go upon the reservation for the purpose of serving process, but this reservation of authority in no way prevents the Federal Government from having full and complete jurisdiction over this military reservation. The above holding, undoubtedly, is supported by the Texas decisions, Gallagher v. Gallagher, Tex.Civ.App., 214 S.W. 516; Houston Printing Company v. Tennant, 120 Tex. 539, 39 S.W.2d 1089; Id., Tex. Civ.App., 76 S.W.2d 762.

The case of Wagner v. Scurlock, 166 Md. 284, 170 A. 539, which is a decision by the Appellate Court of the State of Maryland, also supports our holding. We are cited to the case of Suit v. Shailer, D. C., 18 F.Supp. 568, 569, as being in support of appellant's contention. We think that case is easily distinguishable from the case at bar. That suit was one against the wife of a naval officer. The officer and his wife did not live upon the military reservation but obtained a home and lived in the City of Annapolis. The decision shows that while the officer was subject to military orders the wife was not, and therefore went, of her own volition, to the State of Maryland. She established

a residence, not on a military reservation but in the State of Maryland, and did other acts that indicated that she intended to establish a permanent residence within the State of Maryland.

The judgment of the trial court is in all things affirmed.