[Civ. No. 12556. First Dist., Div. Two. Dec. 27, 1943.]

HERMAN C. LANDRES, Appellant, v. JOSEPH C. ROSASCO, Respondent.

Phillip Barnett and Robert L. Dreyfus for Appellant.

Bush & Ackley for Respondent.

NOURSE, P. J.—The plaintiff appeals from a judgment in favor of defendant in a suit based upon a property settlement agreement. The plaintiff is the assignee for collection of Thelma Taylor, who was formerly married to defendant.

On June 1, 1939, the then Thelma Rosasco and defendant entered into the property settlement agreement, the meaning of which is in controversy here. On June 7, 1939, Thelma Rosasco secured an interlocutory decree of divorce from defendant. On June 12, 1940, the final decree was entered and Thelma Rosasco remarried on or about August 1, 1940. Up until her remarriage the defendant paid the monthly sum provided for in the contract and also in the divorce decree to Thelma Rosasco, at which date he ceased the payments.

The payments accruing between the date of remarriage and June 1, 1942, are the ones sought to be recovered here.

The sole question presented for decision concerns the effect of Thelma Rosasco's remarriage on defendant's obligation to pay the monthly sum provided for in the contract. The trial court found that the provision of the property settlement agreement relating to the payment of the monthly sum to Thelma Rosasco "was not a part of the settlement of property rights between the parties, nor did it have any reference to, nor was it based upon a division of community or other property between the parties, but such provision was an agreement by the husband to make certain payments as alimony or support to the wife." This finding was based on the property settlement agreement itself, and all papers in the divorce proceedings; all evidence relating to discussions, conversations or intentions of the parties was stricken from the record and that ruling is not attacked here.

The pertinent provisions of the agreement read as follows:

*"PROPERTY SETTLEMENT AGREEMENT"*

"Whereas, unhappy differences have arisen and do now exist between the parties, and the said parties are now living apart; and

"Whereas, it is the mutual wish and desire of said parties that a full and final settlement and adjustment of all their property rights, interests and claims be settled and determined by said parties in this agreement; and

"Whereas, the parties desire to make a tentative agreement relative to the custody, maintenance and support of their minor child, Nona Lee Rosasco;

"Now THEREFORE, in consideration of the premises and the mutual relinquishments of property rights arising out of said marriage relations, and in consideration of the covenants herein mentioned, the parties hereto have entered into, and by these presents do hereby enter into, this agreement for the full, complete, permanent and final settlement and adjustment of all their respective property rights, interests and claims, present and future, arising out of, or dependent upon, or in any way connected with their marriage relations, and their mutual rights to support, maintenance and inheritance, as follows:

"1. The husband hereby agrees to pay to the wife upon the execution of this agreement the sum of $2000.00 in cash.

"2. The husband further agrees to pay certain bills which

have been contracted by the wife since the separation of the parties, which bills are in amount somewhere between $500.00 and $600.00.

"3. *The husband further agrees to pay to the wife the sum of $70.00 on the first day of each and every month for a period of three years, commencing June 1, 1939, for her proper support and maintenance.*

"4. The said wife does hereby agree to grant and convey to the husband all her right, title and interest, community and otherwise, in and to the real property situated near LaGrange in Merced County, known as the "Rosasco Ranch" and more particularly described in a deed executed this day by the wife to the husband; and all her right, title and interest in and to any other real property, which said husband may own, or in which he may have any interest, including a tract of 280 acres, more or less, of mountain land in Tuolumne County, standing in the names of J. C. Rosasco and Louisa Rosasco. Said property is more particularly described in a deed executed this day by the wife to the husband.

"5. The said wife does hereby convey to the husband all her right, title and interest, community or otherwise, in and to the cattle, horses, farm implements and equipment, automobiles, moneys on hand or in bank, accounts receivable, and all other personal property whatsoever now owned by the husband or in which said husband may have any interest, including the furniture and furnishings of the home on the Rosasco Ranch above mentioned.

"6. It is understood and agreed that the payments herein specified and the transfers herein made by the respective parties hereto shall be in full for all claims that the said parties may have one against the other. . . .

"9. It is further agreed that each of the parties hereto hereby expressly waives any and all claim to any further support, maintenance or alimony from the other party hereto, save as expressly provided herein, it being the intention of the respective parties that this agreement shall constitute a final, complete and permanent settlement of their respective property rights, and rights to support or maintenance by the other party. . . .

"13. It is further agreed that this agreement is not an agreement for or in contemplation of divorce, and is not intended to affect and does not affect the right of either party to maintain an action for divorce against the other party or

to assert any defense that he or she may have to a suit for divorce instituted by the other party. In the event any such action for divorce is commenced and prosecuted by either party against the other, then it is understood and agreed that in any such action neither party shall be entitled to any costs of suit, attorneys fees or expenses of litigation, or to any alimony, support or maintenance, or to any other sum or sums whatsoever from the other party, save as is expressly set forth herein. . . .

"15. With respect to the custody, care, support and maintenance of Nona Lee, the minor child of the parties, now aged 3 years, or thereabouts, the parties understand that any agreement they may make is tentative only, and is subject to the approval of the proper Superior Court; and that no agreement hereby made is or shall be deemed to be final, even when approved by the Judge of the said Superior Court; but that said minor child will be under the jurisdiction of the Superior Court during her minority, and that either party, if he or she believes it for the best interest of the child, may apply to the Court at any time to modify or change any agreement or decree which may be reached or made with respect to the custody, care, support or maintenance of their minor child.

"Subject to the above principles and understanding the parties hereby agree that for the present the wife shall have the custody of their minor child, Nona Lee; but that the husband shall have the right to see said child at all reasonable times, and shall have the right to take the child to his home to visit with him with reasonable frequency and for reasonable periods. The parties realize that it is almost impossible and probably not desirable to set arbitrary limits on this provision for visits to the father's home; but in this connection the wife promises that she will not be selfish about the child; and the husband promises that his requests will not be unreasonable, and the parties believe that in this spirit they can work this matter out agreeably between them.

"16. The husband agrees to pay to the wife the sum of $50.00 a month on the first day of each month, commencing June 1, 1939, and continuing over a period of three years, for the support and maintenance of Nona Lee. At the end of that time a new agreement will be made for the support and maintenance of said child, the husband hereby expressly recognizing his obligation to support his child during her minority."

In her complaint for divorce Thelma Rosasco prayed for $70 per month "for a period of three (3) years commencing on the first day of June, 1939, for her support and maintenance" pursuant to the agreement to pay such amount which contract right she alleged in paragraph VII of her complaint. The interlocutory decree of divorce ordered "That the defendant, Joseph C. Rosasco, pay to the plaintiff, Thelma F. Rosasco, the sum of $70.00 a month on the first day of each and every month for a period of three years, commencing upon the first day of June, 1939, for her proper support and maintenance." And "That the property rights of the parties have been settled by agreement between them, and that said agreement as to the settlement of their property rights and the division of property between them be, and the same is hereby confirmed; and that neither parties shall henceforth have any claim against the other arising out of their marriage relations, save as is specifically set forth herein."

The final decree of divorce provided: "that the provisions of said interlocutory decree with regard to alimony and the custody and support of the minor child of the parties be and the same are hereby confirmed; that the provisions of said interlocutory decree relating to the property rights of the parties and the division of property between the parties be and they are hereby confirmed, and that neither party shall henceforth have any claim against the other, arising out of their marriage relation save as is specifically set forth in said interlocutory decree."

It should be noted that this is a suit upon the contract which was denominated by the parties, "Property Settlement Agreement." We are not concerned with what possible effect Thelma Rosasco's remarriage might have upon the divorce decree by reason of section 139 of the Civil Code. Any contract rights the parties might have are concurrent with and supplementary to the rights accruing by reason of the interlocutory decree. (*Roberts* v. *Roberts,* 83 Cal.App. 345 [256 P. 826], Civ. Code, sec. 159.)

The appellant contends that the finding of the trial court that the provision for monthly payments is not part of the property settlement agreement is not supported by the evidence before the trial court. With this contention we must agree. The trial court was deciding the construction to be placed upon a written contract without the aid of extrinsic

evidence, and its construction of the contract is not equally reasonable or more reasonable than the construction we place upon the duties and liabilities arising from the Property Settlement Agreement. (*Estate of Wilson,* 40 Cal.App.2d 229, 234 [104 P.2d 716]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Trowbridge* v. *Love,* 58 Cal.App.2d 746, 750 [137 P.2d 890].)

Looking at the contract as a whole we note that it is titled "Property Settlement Agreement" and that the provision for payment of a sum monthly for three years is unqualified and appears within the above entitled document. Only the words "for her proper support and maintenance" indicate an intent that this particular provision is not part of the property settlement agreement and only a provision for alimony. ▇ Even though an agreement specifically denominates the payment alimony and not part of a property settlement agreement, it does not partake of the same characteristics as alimony awarded by the court when it is based upon a property settlement agreement. (*Rich* v. *Rich,* 44 Cal.App.2d 526 [112 P.2d 780].)

▇ The terms of the agreement indicate that the only tentative question in the agreement concerned the rights with respect to the minor child. The court did not have to approve the provision for payments in order to give a contract right therefore. (*Roberts* v. *Roberts, supra.*) These payments for a fixed period of time were expressly part of the consideration for conveyances by the wife of certain property and relinquishment of her further right to support and maintenance. As between the parties upon the signing of the agreement their rights were fixed in the absence of an interest in the state which might be harmed. (14 So.Cal.L. Rev. 373; Civ. Code, secs. 159, 175.) This contract did not require the approval of the divorce court to make it valid and binding as a property settlement agreement. Hence it follows that the provision for support must have been part of a property settlement agreement and not only a provision for alimony in its ordinary sense.

▇ The next question to be decided is the effect of section 139 of the Civil Code as an implied term of an agreement to support a wife. It should be noted that this section concerns the right of a court *upon divorce* to compel a husband to support his wife if he was at fault. This right to compel is qualified in the event of remarriage. We can not say that

this policy of the Legislature was intended to apply to all property settlement agreements in the absence of an agreement to the contrary, which is the situation into which the respondent's position would lead us. This position is supported by *Rich* v. *Rich, supra,* in which the court sustained the denial of a motion to modify a divorce decree based upon a property settlement agreement even though there had been a remarriage. However, it should be noted, although the court did not lay great stress upon it, that the agreement expressly provided for the payment of the money after remarriage. Further in view of the conclusion we have reached with regard to the payments being an integral part of the property settlement agreement we deem this case controlled by *Wallace* v. *Wallace,* 136 Cal.App. 488 [29 P.2d 314]. Although in that case the property settlement agreement did not contain the words "for her proper support and maintenance," the facts are practically similar in that cash payments at the signing of the agreement and at intervals for a year thereafter were involved. The court in answer to the same contentions made here considers the following factors important (p. 492):

"That a husband and wife may alter their legal relations as to property is well established (sec. 159, Civ. Code), and apparently with that in view the parties hereto attempted to mutually adjust their respective claims to certain property. Regardless of any allegation in the complaint using the word 'alimony', a reference to the property settlement agreement discloses they were attempting to effect a complete adjustment of their property and the benefits thereof were to be accepted in full satisfaction of support, maintenance or alimony. With that clause in the agreement it hardly seems probable that the allowance in the decree would have been by way of alimony, but rather as part of a property adjustment. This is further emphasized by the fact that the prayer of the complaint does not ask for alimony but merely that the property settlement agreement be approved, and by the further fact that the order of the court did not in form designate it as alimony and followed the agreement as to amounts and time of payment." All these factors are presented here.

*Atlass* v. *Atlass,* 112 Cal.App. 514 [297 P. 53], upon which respondent relies and which is cited in *Wallace* v. *Wallace, supra,* p. 493, involved a case where extrinsic evidence in the form of affidavits and counter-affidavits was before the

lower court. Further it should be noted that we have no way of determining, from the facts stated, the exact form of the property settlement agreement which was being interpreted.

For the reasons expressed the judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 24, 1944. Carter, J., and Schauer, J., voted for a hearing.