[Civ. No. 13446. First Dist., Div. One. Aug. 15, 1947.]

LYDA RICHARDS BRIGGS et al., Petitioners, v. SUPERIOR COURT OF ALAMEDA COUNTY, Respondent.

Fitzgerald, Abbott & Beardsley for Petitioners.

Phil F. Garvey, Nat Frankel and Owen M. Gentry for Respondent.

BRAY, J.—Petitioners seek a writ of prohibition to restrain the Superior Court of Alameda County from any further proceedings in an action filed in said court against them by one Dorothy Fowler. Petitioners previously appeared specially, and made a motion in said superior court to vacate and quash service of complaint and summons which had been made upon them under the provisions of section 404 of the Vehicle Code. The ground of their motion was that at the time of the accident upon which the cause of action is based both petitioners were not "non-residents" of the State of California. This motion was denied.

It is conceded that prohibition is the appropriate remedy here. (*Berger* v. *Superior Court,* 79 Cal.App.2d 425 [179 P.2d 600]; *Jardine* v. *Superior Court,* 213 Cal. 301 [2 P.2d 756, 79 A.L.R. 291].)

On August 13, 1945, petitioners were involved in an automobile accident in Alameda County with Dorothy Fowler, who on June 11, 1946, filed suit against both petitioners for injuries alleged to have been received by her in that accident. Service was made on petitioners by leaving copies of summons and complaint with the Director of Motor Vehicles, Sacramento, California, and by personal service thereof on petitioners in the city of Rochester, New York.

Petitioners contend that on the date of the accident they were residents of Oakland, California, and hence not "non-residents," as required by section 404 of the Vehicle Code. This section provides that in any action or proceeding growing out of any accident or collision resulting from the operation by a nonresident, or his agent, of a motor vehicle upon the highways of California, service of summons and complaint may be had in the manner followed here. The question to be determined in this case is whether at the time of the accident petitioners were "non-residents" of the state within the meaning of the Vehicle Code.

At the hearing of the motion to quash service, the sole evidence introduced was the affidavits of both petitioners. The affidavit of Ernest Briggs stated that his present home and his home at the time he received a copy of summons and complaint was Rochester, New York; that he is 28 years of age, was born and raised in New York and lived there until June, 1941, when he entered the United States Navy; that, at that time, he had no plans for returning either to New York at a later date or for not returning to it; that he had no fixed intention as to where ultimately he would reside; that he was married to petitioner Lyda H. Briggs in Florida on March 15, 1944, while in refresher training after a return from duty in the Atlantic Ocean area; that he was then living at a naval station. He and his wife established no home together in Florida or elsewhere, as he was required to live at the naval station and there were no quarters there for dependents. In June he was sent for duty in the Pacific Ocean area, and his wife stayed in Florida. In the early summer of 1945 he returned to the United States, and after a leave reported for further orders to the Naval Air Station, Corpus Christi, Texas. About August 3, 1945, he received a set of what he calls ''permanent'' duty orders to the Naval Air Station, Alameda, California. He was an aviation machinist's mate, 2d class. A copy of the orders are attached to the affidavit and show that he was ordered to report to the commanding officer ''for duty in the A & R Shops''; ''This was the first set of permanent duty orders in the United States which I had ever received, and they came to me after I had had extended sea duty, both in the Atlantic and Pacific Oceans. I knew it was the policy of the United States Navy to follow a period of sea duty with a period of permanent shore duty, and I was greatly elated over the fact that the orders were to California for I had, during the course of the war years, heard much of the virtues of that state, and had hoped that we might some day live there. I then and there decided to take this opportunity to establish myself and my family in California and to live there permanently, except for such periods as I might be ordered elsewhere by the U. S. Government. At the time of that decision, I did not intend ever to return to New York or to Florida to live permanently. In line with this plan of action, I determined to take my wife to California with me, to have her's and my personal effects sent from Florida to California, and to establish our home in California.'' He and his wife drove, in

his car bearing a Florida license, to Oakland, California, arriving there about August 6, 1945. They secured an apartment at 2111 23d Avenue, and he reported for duty at the Naval Air Station, Alameda. The living accommodations were not what they desired, and during his spare time they looked for a house to buy or rent. He did not expect that the war would end in August or that he would be eligible for discharge in September or at any time within the near future. When he learned that he would be eligible for discharge in September, his wife and he decided to stay in California, making it their home, particularly because the California climate helped her asthmatic condition. They continued to look for a house and he applied for a civil service job in the A & R Shops. He was discharged from the Navy "on or about the middle of September." They were unable to find a suitable house to buy or rent, and became discouraged about finding one. "No final action had been taken on my application for a civil service job, and I did not know at the time of my discharge when or whether I would be offered the job." They decided to change their plans, to leave California and take a vacation trip, during which they would decide where to locate. His wife insisted that the new location must be one like California, which agreed with her asthma. They left Oakland September 17th and went to Florida to visit her parents. They found nothing suitable there. The climate did not agree with her condition, so in October they went to New York to visit his parents. The New York climate agreed with the wife's asthma, and they decided to make New York their home. He got a job, and they bought a house in Rochester where they now live. During the war, he did not own a home in New York, nor did he have a job to which he was entitled to return. Had he found a house and received a civilian job in California, they would have stayed here. At all times between August 6 and mid-September, 1945, both he and his wife lived in California "with the intention of remaining there permanently, . . . regarded 2111 23rd Avenue, Oakland, California, as our home," and were residents of the State of California.

The affidavit of Lyda R. Briggs was to the same effect. She added one more fact to those set forth in her husband's affidavit. She states: "I had all of our belongings in Florida shipped to California."

■ If the statements of the petitioners that they were residents of California and that they intended to live here

permanently must be taken by the courts at face value, there can be no question but that they were not "non-residents," whatever the interpretation of that word may be. But the court is not bound to accept their statements, if the actions of the parties are inconsistent therewith. While a person's statement of his intention is a "statement of a probative fact, about which he was qualified to testify" (*Johnston* v. *Benton*, 73 Cal.App. 565, at page 570 [239 P. 60]), "A jury or trial judge is not bound, of course, to believe the witness when he says he did not have a certain intent, and may find in the circumstances, actions, and language, an entirely different intent, but the testimony of the witness 'is competent and relevant and not immaterial' (see *Walker* v. *Chanslor*, 153 Cal. 118, 125 [126 Am.St.Rep. 61, [17 L.R.A.N.S. 455] 94 P. 606]; *Barnhart* v. *Fulkerth*, 93 Cal. 497, 499 [29 P. 50]; *Kyle* v. *Craig*, 125 Cal. 107, 114, [57 P. 791]; *Bertelsen* v. *Bertelsen*, 7 Cal. App. 258, 261, [94 P. 80].)" (*Fanning* v. *Green*, 156 Cal. 279, 285 [104 P. 308]; see, also, *Gilmour* v. *North Pasadena Land etc. Co.*, 178 Cal. 6, 9 [171 P. 1066].) "The trier of the facts is the exclusive judge of the credibility of the witnesses. (Sec. 1847, Code Civ. Proc.). . . . In addition, in passing on credibility, the trier of the facts is entitled to take into consideration the interest of the witness in the result of the case. (See cases collected 27 Cal.Jur. 180, sec. 154.) Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. [Citing cases.]" (*Hicks* v. *Reis*, 21 Cal.2d 654, 659-660 [134 P.2d 788].) "While practically all of the decisions say intention is the controlling factor in determining residence, this court said, in *Harrison* v. *Harrison, supra* [117 Md. 607, 84 A. 57], it may be more satisfactorily shown by what is done than by what is said." (*Wagner* v. *Scurlock*, 166 Md. 284 [170 A. 539, 542].)

There were no counteraffidavits filed. However, the substance of the affidavits are contradictory. The acts of the parties as shown in the affidavits definitely contradict their statements as to their intentions. Disregarding, as obviously the trial court did, the self-serving statements of the petitioners, the facts as set forth in the affidavits show that petitioners came to California because of petitioner-husband's Navy orders; that while he calls them "permanent" orders, they were made at a time when the fighting part of the war was almost over (It did formally end August 15th. The orders are dated

August 3 and petitioners arrived here August 6), and when the Navy for some time previously had been discharging men from the service. Moreover, the orders appear to be merely routine orders; and even if ''permanent'' they were subject to change by the Navy at any time. The petitioners were actually in the state only seven days when they had the accident, and altogether were here only one month and 12 days. That petitioners recognized the impermanency of the orders is shown by petitioner-husband's application for a civil service position. Moreover, the car involved in the action was never registered in this state. The exact day of the husband's release from the Navy is not given. It is stated as ''on or about the middle of September.'' They left the state on September 17th. It is significant that although they profess to have desired to make California their home, they left the state within a day or two (or perhaps even the very day) of the husband's release from the Navy, without waiting to find out if the civil service job would be forthcoming. The most reasonable interpretation of the situation is that petitioners intended to remain here only as long as the Navy required them to do so, or until discharge—a time that they well knew would be comparatively short—and then possibly, they would continue to remain, provided the husband decided to accept a civil service job if one were available. Their intention to remain in California was a most indefinite one.

Did their presence here under naval orders, with such an indefinite intention of remaining, make them residents within the meaning of the Vehicle Code? Residence, as used in the law, is a most elusive and indefinite term. It has been variously defined, and means one thing under the attachment laws, another under the voting laws, and still another under the venue laws. There has been no definition of its use in the Vehicle Code of California. In *Berger* v. *Superior Court, supra* (79 Cal.App.2d 425), it was treated, under the facts of that case, as synonymous with domicile, although the question of residence as distinguished from domicile was not discussed.

To determine its meaning, it is necessary to consider the purpose of the act. It is to provide a method whereby persons from other states, who while temporarily within the State of California, become involved in litigation as the result of their use of a motor vehicle on the highways of the state, may be sued in this state, and, although they have left the state, may be

served with process by substituted service. As said in *Hess* v. *Pawloski*, 274 U.S. 352 [47 S.Ct. 632, 71 L.Ed. 1091], in upholding the constitutionality of a similar statute of the State of Massachusetts, "in advance of the operation of a motor vehicle on its highway by a non-resident, the state may require him to appoint one of its officials as his agent on whom process may be served in proceedings growing out of such use." Residents of the state are excluded from this requirement, because being residents here, it is more likely that they will be available for service within the state. Of course, there will be cases where a plaintiff would be met by a change of residence by a defendant who had been a long time resident of the state, very shortly after an accident occurs, and would be thereby prevented from serving process as in a case where a defendant was a non-resident at the time of the occurrence, but as pointed out in *Suit* v. *Shailer*, 18 Fed.Supp. 568, 571, that situation is not peculiar to automobile accidents but would equally apply to other causes of action where the defendant removes from the state shortly after the event giving rise to the cause of action occurs. Evidently what the Legislature intended by the word "non-resident" was the out-of-state person who comes to California for a temporary sojourn, whether it be a transient who is merely journeying through the state, a person who as in *Bigham* v. *Foor*, [201 N.C. 14] 158 S.E. 548, came for a "temporary sojourn during the summer," or, as the facts of this case indicate, came for temporary purposes, which might or might not, later, result in the determination to remain for a considerable period, if not permanently. Surely, the Legislature never intended that under circumstances of this kind, persons who remained in this state a mere six weeks should be considered residents. Such persons have only a temporary abode as distinguished from actual residence. "It is the actual residence of the defendant, not the temporary abode at the time of the accident, which seems to control." (37 Mich.L.Rev. 58, at p. 68.)

While the Vehicle Code does not require that a person from out of state must acquire a domiciliary residence in order not to be classified as a nonresident, it does require a stay here of such length coupled with an intention to remain long enough, that the presence in the state cannot be classified as merely temporary. Therein lies the difference between the situation in the case at bar and in the cases of *Suit* v. *Shailer*, *supra* (18 F.Supp. 568), and *Uslan* v. *Woronoff*, 173 Misc.

693 [18 N.Y.S.2d 222], as well as *Berger* v. *Superior Court,* *supra* (79 Cal.App.2d 425). In the Shailer case the husband of defendant was a lieutenant in the United States Navy. In 1937 he was assigned to duty at the Naval Academy at Annapolis, Maryland. It being peace time, such an assignment meant a reasonable expectation of the assignment not being changed for three or four years. His wife came to Maryland with him and they lived for the next three years, approximately, in the city of Annapolis, first in a dwelling house and later in an apartment leased by them. The husband registered his automobile in accordance with the Maryland statutes. The accident occurred after they had been living in Annapolis approximately a year and eight months. They continued to live there for over a year after the accident occurred in which the wife was driving her father's car. It was conceded that both husband and wife were domiciliary residents of California at the time of the accident. In the litigation which ensued in Maryland the wife was served under a vehicle act similar to ours in California by substituted service. The court held, in effect, that a person in military service could hold his domiciliary residence, or citizenship, in another state and yet have a residence for the purposes of the vehicle act in Maryland. It said: "The meaning of the word 'resident' varies with the context and subject matter. When used in connection with the exercise of political rights it may have a different connotation from that given it where it is used to determine property rights. [Citing cases.] The construction of the term as here used should be made consistent with the particular subject matter. The mischief which was intended to be overcome by the statute was obviously the difficulty of effecting service of summons in the usual way within the State on transient motorists or non-residents who are only temporarily within the State. But no such condition existed in this case where the defendant was actually residing within the State for two years before the wrong complained of, and for more than a year thereafter. There is nothing in the case to indicate that she would not have been amenable to service of summons in the ordinary way at any time within a year after the accident, and indeed it appears that she could not in fact have effectively been sued elsewhere than in Maryland during that period. And it does not appear that, during the three years she was actually here with her husband, she had a home or permanent place of abode elsewhere. Look-

ing at the evident purpose of the Maryland statute and the mischief to be remedied, it seems apparent that the plaintiff's contention puts an artificial and strained construction upon the term 'non-resident' which, for all practical purposes in relation to the subject matter, is far removed from actualities.'' In distinguishing the facts of the case from *Wagner* v. *Scurlock, supra* (166 Md. 284, 170 A. 539), the court said: ''It was there held that a Washington doctor having a substantial family residence and practice in that City was to be considered a non-resident of Maryland even though he had a small bungalow here and had once voted in this State, in a primary election. While the facts of the case are utterly different from those we are here dealing with, the decision in the opinion puts emphasis upon the defendant's permanent place of abode as constituting his residence, in contradistinction to a merely temporary residence in some other place. I find nothing in that case, either as to the facts, or on the principle stated, to rule the decision in the instant case.'' It will be noted that the court there made the same distinction we are making here, that the residence contemplated by our Vehicle Code must be something more than a mere temporary presence. On page 570 the court said: ''The typical case which the statute is apparently designed to meet is where the defendant is only transiently operating a motor vehicle on the Maryland highways, although the statute is not necessarily limited to a continuous journey through the State, but may cover any case where a foreign motor vehicle owner or operator causes damage within the State *while temporarily stopping here.''* (Emphasis added.)

In the Woronoff case, *supra,* there was the same element of semi-permanency that is found in the Shailer case. The defendant admittedly had a domicile in the State of New York, but was attending the University of Pennsylvania at Philadelphia, lived there almost the entire year, gave Philadelphia as his address, and registered his automobile there. While driving in his home state of New York he was involved in a collision between his automobile and that of another person, which resulted in a personal injury action against him. As he had returned to Philadelphia, substituted service was made upon him under a statute similar to ours, on the theory that he was a nonresident of the State of New York. Defendant contended that since he had a domicile in New York he could not be a nonresident thereof. The court stated: ''The recent

tendency is to give to the word 'resident' a popular rather than a technical and restricted meaning,'' (p. 224 [18 N.Y.S.2d]), and held that for the purposes of substituted service in cases arising from motor vehicle accidents, a person could have a domicile in one state and still be a resident of another state, and that the defendant was a nonresident of New York regardless of the fact that he had a domiciliary residence there. But the case stresses the fact that his residence in Philadelphia was more than just temporary. ''In the instant case the defendant attends a university in Philadelphia, Pennsylvania. He lives there practically the entire year; he has registered his automobile there, and has given Philadelphia as his address. Upon these facts alone, it would seem that the defendant is in no position to contest service upon him as a non-resident of the State of New York no matter where he may be domiciled. The plaintiffs were placed in the position either of serving process in the manner they adopted or of awaiting patiently the return of the defendant to his domicile. A prolonged absence, even for years, from his permanent home may occur, for he may find summer employment in the locality where he now attends college. Can it be said that meanwhile the defendant is a resident of New York? The purpose of the statute is to make possible service upon defendants who are not available within the state, and the most reasonable conclusion is to hold that actual residence, regardless of domicile, was within the contemplation of the statute.''

The situation in the Berger case was one in which the length of time of the residence in this state was important. While Berger came to California as a member of the armed forces, he had been here over three years at the time of the accident. There was nothing temporary about the length of Berger's stay in California, at the time the question of residence arose. The Berger case seemed mostly concerned with the question of whether the fact that Berger came and remained here as a member of the armed forces precluded him from claiming a residence here. The court properly held that his mere presence under military orders caused him neither to gain nor lose domicile; that his gaining a residence depended upon his desire or intention. The question that the court did not have to accept defendant's statement of intention was raised in the briefs. The court stated: ''Respondent argues that little reliance should be placed upon petitioner's affidavit because it 'merely states his conclusion that he was a resident of the State of California.' However, in *Johnston* v. *Benton, supra*

[73 Cal.App. 565], the court said at page 570: '. . . And in this connection it may be added that Benton's own affidavit in which he stated that he was a resident of Shasta County must be considered in corroboration of his oral testimony because it was the statement of a probative fact, about which he was qualified to testify (*O'Brien* v. *O'Brien, supra* [16 Cal.App. 103 (116 P. 692)].)' '' Apparently, the opinion was concerned with whether or not the statement of intention as to residence is a conclusion or an ultimate fact, and not with the question of whether the court must necessarily believe the party's statement as to that fact. The opinion, likewise, states that there was no evidence to the contrary of defendant's statement as to his intention. No consideration was given to the fact that a court does not have to accept a defendant's own statement as to his intention. It must be pointed out that the only facts before the court were the defendant's residence here under military orders and his statement of his intention. His residence under military orders would not necessarily negative his statement concerning his intention. As stated in *Pettaway* v. *Pettaway*, (Tex. Civ.App.) 177 S.W.2d 285, at page 287: ''There is no doubt that a soldier of the United States may, while he is such, acquire a domicile in Texas entitling him to resort to the proper courts here to secure a divorce. *Morehouse* v. *Morehouse,* Tex.Civ.App., 111 S.W.2d 831; *Warfield* v. *Warfield,* Tex.Civ.App., 161 S.W.2d 533; *Kennedy* v. *Kennedy,* 205 Ark. 650, 169 S.W.2d 876. However, his removal to the State is not voluntary. His actual physical presence is likewise not necessarily voluntary. He comes and remains in pursuance to orders. This being the case, his coming to the State and remaining therein loses much of its weight in establishing that it was his intention to make Texas his legal residence, that is, his domicile. Despite this, however, it is possible for a soldier to change his domicile from some other state to Texas.''

In our case, on the other hand, we have the acts of the petitioners which are inconsistent with their declarations. ''Actions speak louder than words.'' Moreover, in the Berger case, although the court did not take into consideration the fact that prior to the accident Berger became a registered voter of Yuba County, that fact was in the background.

The Sacramento Superior Court case of *Voytus* v. *Rowe* is easily distinguishable from the case at bar. There, although

the defendant actually only stayed in California a little less than five months, his actions on coming here corroborated his claim of intention to reside here. Among other things he brought his wife and child and not just "our belongings in Florida," but his furniture, household effects, etc. Shortly after his arrival he applied to the Motor Vehicle Department of California for and was issued a license for his automobile as a permanent resident of this state; and also applied for and was issued a California chauffeur's license. ▮ In our case the only act performed by petitioners which might indicate a desire to stay in California more than temporarily was the application of the husband for a civil service job, and the effect of that act is completely spoiled by the fact that he left the state immediately upon his release from the Navy without attempting to find out whether or not he would obtain the job.

▮ The burden of proof in a case of this kind is on the plaintiff. (*Jermaine* v. *Graf*, 225 Iowa 1063 [283 N.W. 428].) However, that does not mean that the plaintiff must necessarily offer evidence if the facts stated in the petitioners' affidavits support plaintiff's contention. The facts in this case (other than the claim of the intention of the petitioners) are not disputed. The inferences to be drawn from those facts are controverted. These facts and the reasonable inferences to be drawn therefrom contradict petitioners' statements of their intentions. The most reasonable interpretation of the facts discloses a very temporary sojourn in California. *Collins* v. *Grey*, 123 Misc. 227 [204 N.Y.S. 210], relied upon by petitioners, is of no help in this discussion, as the facts set forth in the opinion are extremely meager. While there were no answering affidavits, apparently there was nothing in the supporting affidavit that contradicted in any way the facts of defendants' residence. The same is true of the factual situation in *Jermaine* v. *Graf, supra.*

▮ Respondent calls attention to the fact that subsection (h), added to section 404 of the Vehicle Code in 1945, and providing, "As used in this section 'non-resident' means a person who is not a resident of this State at the time the accident or collision occurs," did not take effect until subsequent to the accident upon which the litigation is based, and contends that the time when the question of residence should be considered is the time of service, when admittedly petitioners were non-residents of California. Petitioners' position is that the addi-

tion of subsection (h) was merely a declaration by the Legislature of its previous intent rather than a new interpretation of, or change in, the act. In view of our determination that petitioners at all times were nonresidents of California, it is unnecessary to pass upon this question, although, as shown in *Suit* v. *Shailer, supra* (18 F.Supp. 568, 570), it is doubtful if the courts would be justified in supporting respondent's contention.

As hereinbefore quoted from *Suit* v. *Shailer* (18 F.Supp. 568, 571), "the meaning of the word 'resident' varies with the context and subject matter." Thus, in construing the attachment statutes of this state, the case of *Hanson* v. *Graham,* 82 Cal. 631 [23 P. 56, 7 L.R.A. 127], held "where a man has a settled abode for the time being in another state, for purposes of business or pleasure" (p. 634) he was a nonresident even though he had a domiciliary residence in this state. Although the rule as to attachment proceedings is not necessarily the one to apply to proceedings under the Vehicle Code, it is interesting to note that in the Hanson case the defendant "went to Chile for the purpose of prosecuting his business of contractor there, and that if successful in obtaining contracts he would remain at least as long as would be necessary for their completion; and that he had been gone about four months without returning" (p. 632). The admittedly temporary apartment occupied by the petitioners here and the temporary nature of their stay could hardly be termed "a settled abode." Moreover, the court (p. 633) quotes with approval from the Virginia case of *Long* v. *Ryan,* 30 Gratt. 720: " 'It is apparent that the word "residence," like that of "a domicile," is often used to express different meanings, according to the subject-matter. In statutes relating to taxation, settlements, the right of suffrage, and qualification for office, it may have a very different construction from that which belongs to it in the statutes relating to attachments. In the latter, actual residence is contemplated, as distinguished from legal residence. . . . While, on the one hand, the casual or temporary sojourn of a person in this state, whether on business or pleasure, does not make him a resident of this state within the meaning of the attachment laws, especially if his personal domicile be elsewhere, so, on the other hand, it is not essential he should come into this state with the intention to remain permanently, in order to constitute him a resident.' "

The phrase "casual or temporary sojourn of a person in this state . . . on business" well describes the short stay of the petitioners in California. *Egener* v. *Juch*, 101 Cal. 105 [35 P. 432, 873], again an attachment case, applied the ruling in the Hanson case to members of a theatrical troupe performing in California. As pointed out in the dissenting opinion of Chief Justice Beatty, the majority ruling held, in effect, that the mere presence of a defendant in the state made him a resident within the meaning of the attachment law. No one would contend that under the Vehicle Code the mere presence of a defendant in the state constitutes him a resident.

In *San Diego Savings Bank* v. *Goodsell*, 137 Cal. 420 [70 P. 299], the court laid down the rule that for purposes of publication of summons under sections 412 and 413 of the Code of Civil Procedure, "residence" meant an actual residence as distinguished from domiciliary residence. But in our case, the facts do not justify a finding of actual residence as distinguished from a mere temporary residence within the state.

We do not deem it necessary to decide petitioners' contention that in a case involving jurisdictional facts tried on affidavits, uncontradicted by other affidavits, the appellate court should try the issues, de novo, somewhat analogous to the rule relating to the effect of a trial court's construction of a writing when no parol evidence is involved (*Moore* v. *Wood*, 26 Cal.2d 621 [160 P.2d 772]; *Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825]; *Landres* v. *Rosasco*, 62 Cal.App.2d 99 [144 P.2d 20]), for the reason that we believe that the inferences drawn by the trial court from the facts set forth in the affidavit are the most reasonable ones to be drawn, and are the ones we would draw were the matter one before us de novo. As in the case of *Fuller* v. *Lindenbaum*, 29 Cal.App.2d 227 [84 P.2d 155], we agree with the trial court's finding.

The petition is denied.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied September 13, 1947, and petitioners' application for a hearing by the Supreme Court was denied October 2, 1947.