### JOHNSON v. JACOBY.

### No. 10860.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 14, 1951.

Decided March 13, 1952.

Washington, Circuit Judge, dissented.

---

Thurman L. Dodson, Washington, D. C., with whom Ruth C. Flowers, Washington, D. C., was on the brief for appellant.

Justin L. Edgerton, Washington, D. C., with whom Charles E. Pledger, Jr., Washington, D. C., was on the brief, for appellee.

Before CLARK, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Vivienne B. Johnson sued Henry R. Jacoby and Capital Transit Company in the United States District Court for the District of Columbia on November 18, 1947, to recover damages for personal injuries sustained by her April 24, 1945, when the streetcar on which she was a passenger collided with an automobile driven by Jacoby. The principal question is whether Jacoby was, at the time of the accident, a nonresident within the meaning of the Financial Responsibility Act, § 40–403, D.C. Code 1940, so that he could be brought before the court by the substituted service provided for in that statute.

No attempt to serve Jacoby with process was made until August 26, 1948, when a summons and a copy of the complaint were served on the Director of Vehicles and Traffic of the District of Columbia, the person designated in the Act to receive service for a nonresident defendant. Nearly seven months later, on March 15, 1949, a deputy United States marshal served Jacoby in New York. He moved to quash the service and return thereof on the ground that he was not a nonresident within the meaning of the Act and consequently not subject to its substituted service. In support, he filed his affidavit that on December 31, 1943, he came from his home in New York to accept employment here and actually lived in the District thereafter until early in January, 1946, when he returned to New York. An affidavit in opposition to the motion to quash showed that on April 24, 1945, the date of the accident, Jacoby's automobile bore New York license plates.

Jacoby's motion to quash was granted June 27, 1949. Nearly a year later—on June 8, 1950—appellant obtained alias process which was served on the Director of Vehicles and Traffic on June 12. Notice of that service and a copy of the process were sent by registered mail to Jacoby in New York. Again he moved to quash and again the motion was granted. This appeal is from the order granting the second motion.

This court held in Wood v. White, 1938, 68 App.D.C. 341, 97 F.2d 646, that the provision of the Financial Responsibility Act for substituted service upon a nonresident does not apply to one who was a resident of the District of Columbia at the time of the accident and who became a nonresident thereafter, but prior to the time the action was instituted; i. e., that the nonresidence referred to in the statute means nonresidence at the time of the accident. Since that point is settled, the only question in this case is whether Jacoby was a nonresident of the District on April 24, 1945,—a question which turns on the mean-

ing of the word "nonresident" as used in the statute.

Judge Chesnut, of the District of Maryland, had occasion, in Suit v. Shailer, D.C., 1937, 18 F.Supp. 568, to consider the meaning of the word "nonresident" in a Maryland statute largely similar to our own. In that case Mrs. Pickton, one of the defendants, moved to quash the return of service of summons upon her which, treating her as a nonresident, was made by service upon the Secretary of State. She alleged that she was not a nonresident of Maryland within the meaning of the statute. Mrs. Pickton was the wife of a lieutenant in the United States Navy and went to Maryland with him when he was assigned to duty at the Naval Academy in Annapolis about September 15, 1932. They actually resided in Annapolis from that date until May 25, 1935, at which time Lt. Pickton was assigned to duty elsewhere and he and his wife left Annapolis, and thereafter she resided in California. She was not a citizen of Maryland.

The plaintiff sued for personal injuries due to the alleged negligence of Mrs. Pickton when the car she was driving was involved in an accident in Annapolis on May 3, 1934. The suit was filed August 10, 1936. The car which Mrs. Pickton was driving bore California license plates. The plaintiff contended the service on Mrs. Pickton as a nonresident was proper, but she contended that it was improper because she had been an actual resident of Maryland for about two years prior to the accident and continued to be such a resident for more than a year thereafter. Judge Chesnut said, 18 F.Supp. at page 571: "The meaning of the word 'resident' varies with the context and subject matter. * * * The construction of the term as here used should be made consistent with the particular subject matter. The mischief which was intended to be overcome by the statute was obviously the difficulty of effecting service of summons in the usual way within the State on transient motorists or nonresidents who are only temporarily within the State. But no such condition existed in this case where the defendant was actually residing within the State for two years be-

fore the wrong complained of, and for more than a year thereafter. There is nothing in the case to indicate that she would not have been amenable to service of summons in the ordinary way at any time within a year after the accident, and indeed it appears that she could not in fact have effectively been sued elsewhere than in Maryland during that period. * * * Looking at the evident purpose of the Maryland statute and the mischief to be remedied, it seems apparent that the plaintiff's contention puts an artificial and strained construction upon the term 'non-resident'. * * *"

We construe the word "nonresident" as used in the Financial Responsibility Act of the District of Columbia as Judge Chesnut construed it in its context in the Maryland statute. The facts of this case are almost identical with those in Suit v. Shailer. One may be a resident of the District for the purposes of the Act, even though domiciled elsewhere. Although Jacoby may have been domiciled in New York on April 24, 1945, as his use of New York license plates may tend to indicate, he actually resided in the District of Columbia from December 31, 1943, until early in January, 1946. He had lived in the District more than fifteen months before the accident and continued to live here more than eight months after it occurred. There is nothing in the case to indicate that he would not have been amenable to service of summons in the ordinary way at any time within eight months after the accident. In our view the statute was not intended to reach an actual resident, such as Jacoby was, but was enacted to provide a means of bringing before the local court a nonresident transient motorist who is here today and gone tomorrow.

We therefore hold that in the circumstances of this case Jacoby was not a nonresident of the District of Columbia and could not be reached by substituted service.

Affirmed.

WASHINGTON, Circuit Judge (dissenting).

Where a resident of New York comes to the District of Columbia on a military as-

signment in time of war, drives with New York plates while in the District, renews those plates during his stay, and returns to New York before suit is brought in respect of an accident occurring here, I think he must make a very strong showing indeed that he was in fact a resident of the District if he asks our courts to quash substituted service made on him after he has returned to New York. Appellee's affidavits in the District Court say little about the nature of his employment here,[1] or the circumstances under which he lived while in the District. They allege simply that he was "residing in Washington, D. C. and living at 3135 Adams Mill Road, N.W., that city * * *." Nothing is said about whether he owned the premises, rented them, or was simply a guest or roomer. Nothing is said about his payment of taxes—whether to New York or to the District—and nothing about the other indicia of residence, such as voting, bank deposits, mailing addresses, phone listings, and the like.

We are concerned here with a statutory provision passed for a particular purpose: that of assuring ready availability for suits arising out of the operation of a motor vehicle. Its criterion of "residence" must be viewed in that context. Appellee tells us little bearing on his availability in the District. He says simply that for a time he worked and maintained some sort of living quarters here. But we also know that, for the purposes of registering his car, he listed his New York address with the New York Bureau of Motor Vehicles and told the New York authorities that he resided in that city.[2] Since it is not shown whether appellee gave a District of Columbia address to appellant after the accident occurred, or even whether he was listed in any of the Washington directories, it may well be that appellant's only means of locating him was through his New York registration.

The conclusion alleged in appellee's affidavit that he was "residing in Washing-ton" is impotent to resolve the ambiguity inherent in the known facts. Briggs v. Superior Court, 81 Cal.App.2d 240, 183 P.2d 758. See also State of Texas v. Florida, 306 U.S. 398, 425, 426, 59 S.Ct. 563, 830, 83 L.Ed. 817. The burden of showing local residence must be on appellee. It is he who would move the court to quash its process, and only he knows the circumstances of his sojourn in the District which would justify the court in doing so. Cf. District of Columbia v. Murphy, 314 U.S. 441, 455, 62 S.Ct. 303, 86 L.Ed. 329.

When appellee chose to continue to operate his car under New York registration, he avoided the burdens, such as motor vehicle inspection, attendant upon local registry. Now he seeks to escape as well the burden imposed on foreign motorists by the Financial Responsibility Law. The requirements of that statute are designed to enable persons injured in the District to enforce more readily their right of legal redress. The decision of the court, on the other hand, makes it easier for transients here to force resort to foreign courts.

In cases like the present one, responsible state courts have not hesitated to allow substituted service under statutes akin to ours. See, for example, Briggs v. Superior Court, supra; Wagner v. Scurlock, 166 Md. 284, 170 A. 539; United Services Automobile Ass'n v. Harman, Tex.Civ.App., 151 S.W.2d 609, certiorari denied 315 U.S. 807, 62 S.Ct. 640, 86 L.Ed. 1206. I cannot find it conclusive that a Federal judge, interpreting Maryland law, reached a different result—on different facts—in Suit v. Shailer, D.C.Md., 18 F.Supp. 568. Expressions of that court's conclusions as to Maryland law and policy are not persuasive, especially in view of the peculiar problem which the temporary sojourner presents in this jurisdiction. I think it is our duty to enforce the policy and purpose of our own statute, according to its terms.

1. Appellee says that he came to Washington "in a military capacity to accept an assignment with the Office of Strategic Services, War Department * * *."

2. He apparently made a similar statement to the District of Columbia traffic authorities. He says that he inquired as to the necessity of taking out District plates and was told he need not do so. This must have been the result of an understanding on the part of the District authorities that he was not a resident here. See D. C.Code 1940, §§ 40–102, 40–104, 40–303.