(Decided April 1, 1898).

———————o———————

## WALLACE HOWARD *vs.* T. ALBERT SKINNER, ET AL.

*Qualification of Voters—Residence on Vessel—Domicile of Origin.*

An unmarried man employed as a clerk on a steamboat which plies between various points and whose only sleeping room is on the boat, does not thereby acquire a residence in the home port of the vessel which entitles him to be registered as a voter there.

A seafaring man retains his former domicile and residence, although he may be absent for a long period of time, until by actual residence elsewhere he acquires a new domicile.

Appeal from an order of the Superior Court of Baltimore City (DOBLER, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Jan. 27, 1898).

*George Weems Williams*, for the appellant.

*Harry W. Henderson*, for the petitioner Perry, appellee.

*John C. Rose* filed a brief for the Board of Registry, appellees.

BRISCOE, J., delivered the opinion of the Court.

On the 26th of October, 1897, Robert W. Perry, Jr., of Baltimore, filed a petition under the Act of 1896, chapter

202, in the Superior Court of Baltimore City, wherein he alleged that the appellant, Wallace Howard, who professes to reside aboard the steamer Westmoreland, of the Weems Steamboat Company, at Pier 2, Light street wharf, Baltimore, and who is registered as a qualified voter in the first election precinct of the 15th Ward (Third Legislative District), was not a qualified voter, entitled to be so registered. And from an order of the Court, directing his name to be stricken from the list of registered voters for this precinct and ward, this appeal has been taken.

It appears from the record that at the trial of the case the appellant, Howard, who was the only witness examined, testified that he had been employed as clerk of the Weems Steamboat Company for over three years ; that the steamer upon which he was employed was engaged in the transportation of passengers and merchandise between the city of Baltimore, the Rappahannock and Patuxent Rivers, with its home port in the city of Baltimore ; that he was unmarried and had a room upon the steamer, where he slept ; that he had never voted either in Baltimore or elsewhere. He also testified that he came to Baltimore from St. Mary's County, where he would return in the event of losing employment ; that he had no room or other place to live except on the boat ; that he had lived with his aunt on Preston street, in the Second Legislative District of Baltimore, about one or two weeks before he was employed by the steamboat company. There was other evidence tending to establish the qualification of the appellant, as a voter, but as it is conceded that he possessed all the necessary qualifications prescribed by the Constitution of the State, except that of residence, it need not be more fully stated for the purposes of this case.

It is quite apparent under the facts of the case, that the appellant never acquired a voting residence in the city of Baltimore, unless his alleged residence upon the steamer, while temporarily lying at her pier at Light street wharf, in the city of Baltimore, gave him one. The appellant's

domicile of origin was St. Mary's County, and this con-
tinued until he acquired another elsewhere. By the express
terms of Article 1, section 1, of our Constitution, a person
who shall have acquired a residence in a county or city of
the State, entitling him to vote at an election there held,
shall be entitled to vote in the election district from which
he removed, until he shall have acquired a residence in the
part of the county or city to which he has removed. *Mc-
Lane* v. *Hobbs*, 74 Md. 171; *Gilbert* v. *Shafer*, 73 Md. 66.
And in *Turner* v. *Crossby*, 85 Md. 180, this Court said, in
construing section 23, chapter 202 of the Acts of 1896
(the present Registration Law of the State), that in determ-
ining whether any person is or is not a resident of any voting
precinct, it shall be presumed that if a person is shown to
have acquired a residence in one locality, he retains the
same until it is affirmatively shown that he has acquired a
residence in another locality.

The next question, then, is, did the appellant acquire a
voting residence in the city of Baltimore by residing upon
the steamer, in the manner as stated by him. Now the rule
of law seems to be settled, that a seaman or seagoing man
retains his domicile of origin, although he is regularly em-
ployed on a steamer, unless by actual residence, he acquires
a domicile elsewhere. In *Thorndike* v. *City of Boston*, 1
Metcalf, 245, CHIEF JUSTICE SHAW states the rule thus: "If
a seaman without family or property sails from the place of
his nativity, which may be considered his domicile of origin,
although he may return only at long intervals or even be
absent many years, yet if he does not by some actual resi-
dence or other means acquire a domicile elsewhere he retains
his domicile of origin." And to the like effect are the cases
of *Sherwood* v. *Judd*, 3 Bradford's Reports, 276 ; *Bangs* v.
*Brewster*, 111 Mass. 385 ; *Long* v. *Ryan et al.*, 30 Grat.
718 ; *Desesbats* v. *Berquier*, 1 Binney, 349 ; Note A ; *Ex
parte Bye*, 2 Daley, 525 ; *Fry's case*, 71 Pa.; and also *Cool-
ey's Constitutional Limitations*, 755 ; *Story on Conflict of
Laws*, 55 ; *Dicey on Domicile*, 139, and *Jacobs on Domicile*,

385. And this, we think, is the safe rule to be adopted and applied in cases similar to the one now under consideration.

The appellant's domicile of origin continued until another domicile was acquired, and as he could acquire no new residence where the steamer happened to stop or to have her wharf, he did not lose his original residence. If a person could gain a voting residence by simply residing upon a steamboat, because it was temporarily fastened to a pier or wharf, while discharging its freight and taking on its cargo, then one might acquire any number of residences and would have the right to register at either terminus of the steamer, or at any point where the steamer stops. Residence, as contemplated by the framers of our Constitution, for political or voting purposes, means *a place of fixed present domicile.* The object in prescribing residence as a qualification for the exercise of the right of suffrage, says this Court in *Shaeffer* v. *Gilbert*, 73 Md. 70, is not merely for the purpose of identifying the voter and as a protection againt fraud, but also that he should become in fact a member of the community and as such have a common interest in all matters pertaining to its government. Residence upon a steamer like that claimed by the appellant has none of the characteristics of a fixed or permanent abode, within the meaning of our Constitution, as entitles a person to be registered as a qualified voter. If the contention of the appellant in this case was sustained, then a steamboat company could fix the legal residence of its employees, who reside upon its steamers, by simply changing its pier or wharf.

The case of *Collins*, 64 *Howard's Practice Reports*, 63, relied upon by the appellant, is clearly distinguishable from the case at bar. It has no application to the residence of a voter, as prescribed by the Constitution of our State.

It follows, then, the ruling of the Court below, that the name of the appellant, Wallace Howard, be stricken from the list of qualified and registered voters of the 15th Ward of Baltimore was correct, and its order will be affirmed.

*Order affirmed with costs.*

(Decided May 13th, 1898).