## HENRY W. WAGNER *v.* HERBERT C. SCURLOCK
ET AL.

[No. 86, October Term, 1933.]

*Decided January 17th, 1934.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Joseph J. Rehm,* for the appellant.

*Hyman Ginsberg,* with whom were *Benjamin Michaelson* and *Ginsberg & Ginsberg* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

This appeal is from an order granting a motion to strike out a judgment which the plaintiff, Henry W. Wagner, appellant, had obtained against the defendants, Herbert C. Scurlock and Herbert Smith Scurlock, appellees, under the provisions of the Acts of 1931, ch. 70, Code, art. 56, secs. 190A and 190B, which is the statute providing for actions growing out of any motor vehicle accident or collision in this state in which nonresident defendants are involved.

On October 22nd, 1932, the plaintiff brought suit in the Court of Common Pleas of Baltimore City, the declaration alleging that it was for damages to the plaintiff's automobile as the result of a collision on August 2nd, 1931, with a car owned by Dr. Herbert C. Scurlock, driven by Herbert Smith Scurlock (his son) ; the claim for damages being $2,500. The docket entries show, "Copy and duplicate Writ sent Secretary of State," and notice to the defendants, "Dr. Herbert C. Scurlock and Herbert Smith Scurlock, non-residents of the state of Maryland, and residing at 929 Rhode Island Avenue, N. W., Washington, D. C.," giving them notice of the suit, together with a copy of the declaration, advising them that they must plead "within sixty days from the date of delivery noted upon the return card receipt showing delivery of this notice, or judgment by default" would be entered against them, and that service of process had been made against them by leaving a copy of the process in the hands of the Secretary of State of Maryland. On October 29th, 1932, affidavits of compliance were filed, "showing the delivery of said envelope to said addressee, delivery having been made on October 28th, 1932," and "return receipt card attached, showing delivery on October 28th, 1932." The record shows separate notices, copies and registry receipts, and affidavits of compliance as to each of the defendants. On December 28th, 1932, a motion for judgment by default was filed, and on the same day judgment entered. On February 6th, 1933, a waiver of jury trial was filed by the plaintiff, and on the same day an inquisition in favor of the plaintiff for $775.00. March 21st, 1933, a writ of *fi. fa.* issued to the clerk of the Circuit Court for

Anne Arundel County along with a copy of the docket entries for Baltimore City, and on April 13th, 1933, the plaintiff's attorney wrote the defendant Herbert C. Scurlock that the sheriff of Anne Arundel County had levied on lot No. 20, block No. 5, of "Highland Beach" in Anne Arundel County to satisfy the judgment entered against him and his son.

On April 17th, 1933, the defendants filed a motion to strike out the judgment for the following reasons: 1. That Herbert C. Scurlock was at the time of the entry of judgment a legal resident and voter of the Second Election District in Eastport, in Anne Arundel County, and that his son, Herbert Smith Scurlock, resides with him. 2. That under the circumstances the judgment was improperly, irregularly, and illegally obtained. 3. That the judgment was fraudulent, excessive, and contrary to an agreement between the plaintiff and Herbert C. Scurlock. 4. That the judgment was obtained for the price of a new automobile, whereas the damages were to a used car, and amounted to about $250. A motion *ne recipiatur* was filed to this because not sworn to, and on May 12th, 1933, this omission was supplied and the petition refiled.

The affidavit of the plaintiff, Henry W. Wagner, was filed on June 5th, 1933, and later offered at the hearing of the defendants' petition, wherein he stated that on the day of the collision of his car with Dr. Scurlock's, he had a talk with him about the accident at the place of the collision, when Dr. Scurlock told the plaintiff that he resided at 929 Rhode Island Avenue, N. W., Washington, D. C., and that he was the owner of the Buick car, which then and there bore District of Columbia license tag No. M-4119 for the year 1931; that subsequently thereto he received three envelopes containing communications from Dr. Scurlock, the envelopes being offered in evidence showing Washington postmarks, with the said Washington address typewritten thereon, two postmarked August 2nd and 7th, respectively, the other postmark not legible; that later in September, 1931, he called to see Dr. Scurlock at the address the latter had given him, and found it to be a valuable three-story brick house, in front of which

he had a professional sign, and inside his office; and that Dr. Scurlock's family resided in the house, which was expensively and comfortably furnished.

The affidavit of Mr. Rehm, the plaintiff's attorney, filed the same day, and offered in evidence at the hearing, stated that on April 13th, 1933, he accompanied the sheriff's deputy, F. W. Weems, to Highland Beach, where, by the aid of a plat he had made of the addition from the land records of Anne Arundel County, he located Dr. Scurlock's house "which was of inexpensive construction, built elevated from the ground, but has no basement, nor chimney, and is not built to resist the elements of the fall, winter and early spring seasons, and is located about one city block from the waters of Chesapeake Bay, * * * all of the houses there were unoccupied on that day," the only persons in evidence being an old colored man who identified the house as Dr. Scurlock's, and a painter who was working on a house along the beach. And on his return to Baltimore that day he wrote the letter about the levy referred to.

The only other evidence adduced at the hearing, except certain records which will be mentioned, was the testimony of Dr. Scurlock, who testified that he was a practicing physician, a teacher of the school of medicine at Howard University, Washington, for about thirty years. "My home is in Anne Arundel County, Maryland. In a little settlement known as Highland Beach." "A registered voter in Anne Arundel County. I last voted in 1930. The Governor's election, yes, sir; as near as I recall." He owned the car involved in the case, but it was driven by his son, who informed him of the accident. Asked if he had ever taken up with the plaintiff the matter of the settlement of the case, he said: "He asked me when I appeared upon the scene if I had automobile insurance and I said nothing to cover that, and he said to me, 'Well my car is pretty badly wrecked, what will you do about it?' I said, 'Well, look at mine, mine is pretty badly wrecked too. What about mine?' He said, 'Well, I have got insurance that will take care of yours.' I said, 'Is that so?' 'Well,' I said, 'then we can come to some agreement,'

and we went off to the side and talked the thing over. In the meantime, one of the wrecking cars had come out and the mechanic had looked over and told Mr. Wagner he would repair the car for $250. Mr. Wagner conveyed that intelligence to me, and he said, 'Are you willing to pay the $250?' I said, 'Mr. Wagner, for $250, yes; if you take care of the repairs to my car.'"

This is all there is about an alleged agreement, except what appears in the affidavit of Mr. Wagner, the plaintiff, who said, evidently when he called at the defendants' house in Washington in September, that: "When he, affiant, attempted to discuss the automobile accident with said Dr. Herbert C. Scurlock, affiant told him that affiant's Hupmobile 8 sedan has been found to have been damaged so badly that it could not be repaired satisfactorily and that it would be necessary for affiant to purchase a new automobile of the same kind; said Dr. Herbert C. Scurlock informed affiant that his, Dr. Scurlock's, counsel had advised Herbert C. Scurlock not to pay anything at all and further not to even discuss the matter with affiant, whereupon the conference ended and affiant left said house." The court said, "Is that of the slightest importance if this gentleman is a resident of Maryland," and the remarks of the court made from time to time during the hearing indicate that the decision was that the defendants were residents of Maryland, and the proceedings, except as quoted, were conducted with that end in view. It should be noted, however, that the inquisition was had before a judge who had to be satisfied with the proof of damage, and that he found it, under the evidence, to be $775. With no other evidence of fraud, surprise, or excessive damages in the record, that ground, as asserted in the petition of the defendants, is not sustained by the evidence.

With regard to the question of residence, it appears that Dr. Scurlock by deed dated September 7th, 1920, purchased the ground in Washington upon which the house occupied by him and his family is located, and that, prior thereto, and ever since, he has been a physician, chiefly now, and for many

years past, engaged in the teaching of medicine at Howard University. By deed dated November 3rd, 1926, Haley G. Douglass and wife of Washington, D. C., conveyed to Herbert C. Scurlock, of Washington, D. C., a lot 50 feet by 100 feet, known as lot No. 20 in block No. 5 on the plat of "Highland Beach" in Anne Arundel County, for which he paid "between five and six hundred dollars," and erected a building thereon for "at about $750.00." There was offered in evidence an application for a certificate of title executed October 27th, 1931, for a Buick car, 1927 model, from the Department of Vehicles of the District of Columbia, signed and sworn to by "H. C. Scurlock, address, 929 Rhode Island Avenue, N. W.," and a motor vehicle registration for 1932, at the same address, and a conditional sales contract for the same automobile, made August 15th, 1931, signed by Dr. Scurlock, in which he gives the same Washington address. Another conditional sales contract for a radio was offered, executed October 10th, 1932, by H. C. Scurlock and Mabel S. Scurlock, of 929 Rhode Island Avenue, N. W. There also appears a certificate from E. Austin Baughman, commissioner of motor vehicles of Maryland, that neither of the defendants had an operator's or chauffeur's license issued in the years 1930, 1931, 1932, and 1933. The defendant testified that he had not had a Maryland operator's license since the years when it was required of residents of the District coming into Maryland, which was prior to taking up his residence at Rhode Island Avenue.

The evidence which Dr. Scurlock furnished of his residence in Maryland is contained in his testimony and a certificate of registration and voting in 1930. Asked, "where do you intend to make your home at the conclusion of your instructorship at Howard University?" he answered, "At the present state, to my little home in Anne Arundel County, all my efforts are toward making that my retired residence." On cross-examination: "Q. How long have you been a resident of Washington? A. I do not—I only reside in Washington as a matter of convenience for my work. My residence is in Anne Arundel County, Maryland." Again: "Q. Mabel S.

Scurlock is your wife? A. Yes. Q. And you both reside at 929 Rhode Island Avenue, Washington, D. C.? A. We reside at Highland Beach, Maryland, and temporarily domiciled at 929 Rhode Island Avenue."

When asked by the court how many months in the last twelve he lived in Anne Arundel County and at the Washington, D. C., address, he said: "Judge, it is difficult for me to say precisely how much time. I think quite as much or more, in the last twelve months, even the months when I have had to be very close to the work in Washington, and I could not run the chance of not getting to my work in the morning, and going to and from Highland Beach."

Dr. Scurlock testified that he was a registered voter in Anne Arundel County; last voted in 1930; at "the Governor's election, yes, sir; as near as I recall." The certificate of the clerk to the election supervisors of Anne Arundel County, dated June 6th, 1933, is "that Herbert C. Scurlock was a qualified registered voter of the First Precinct of the Second Election District of Anne Arundel County, Maryland, in 1930, and he voted in the Primary Election of said year." It does not show that he voted at the election in November. Nor does it show when he registered, and whether he had made the declaration of intention required by sections 31 and 32 of article 33 of the Code, as amended by Acts 1929, ch. 578, which is necessary to determine his right to registration *Bangs v. Fey,* 159 Md. 548, 152 A. 508.

The main question on the merits is whether the defendants were nonresidents of the State of Maryland, and as such subject to the provisions of the Acts of 1931, ch. 70. In *Howard v. Skinner,* 87 Md. 556, 550, 40 A. 379, 380, it is said: " 'Residence,' as contemplated by the framers of our constitution, for political or voting purposes, means *a place of fixed present domicile.* The object in prescribing residence * * * for the exercise of the right of suffrage, says this court in *Shaeffer v. Gilbert,* 73 Md. 70, 20 A. 434, is not merely for the purpose of identifying the voter, and as a protection against fraud, but also that he should become in fact a member of the community, and, as such, have a common interest

in all matters pertaining to its government." And in *Harrison v. Harrison,* 117 Md. 607, 613, 84 A. 57, 59, it is said: "This evidence with regard to the exercise of the right of suffrage has been held in the federal courts to be conclusive upon the question of domicil, but in the state courts a different view has obtained. *Hayes v. Hayes,* 74 Ill. 312. The better rule seems to be that while it is an element and strong evidence as to intention, it is not conclusive, and, just as it is permitted to an individual to testify as to his intent, that intent may nevertheless be more satisfactorily shown by the acts of the individual, rather than by his words." As stated in 19 *C. J.* 436: "Exercise of the elective franchise is important to be considered. While it may be the highest evidence of domicile, as a general rule it is not conclusive, and when overbalanced by other circumstances, the fact of voting may be of slight importance." *Willingham v. Willingham,* 162 Md. 539, 540, 160 A. 280.

While practically all of the decisions say intention is the controlling factor in determining residence, this court said, in *Harrison v. Harrison, supra,* it may be more satisfactorily shown by what is done than by what is said. Dr. Scurlock, by asserting over and over that "Highland Beach" is his permanent residence, and Washington his temporary residence, seems to convince himself that this is the fact. Now, what are the facts: He graduated from a medical school in Washington in 1900, and has gained his livelihood there by practicing and teaching medicine ever since. He there owns and resides with his family in a large and comfortable house. There his children have gone or are going to school. Everything indicates that Washington is his fixed, permanent, abode. While so domiciled he buys a lot in a water-front development in Anne Arundel County, and erects thereon a house which is only suited for a temporary habitation for his family, not fit for year-round living, and when the summer is over and his work calls, he and his family hark back to the residence in Washington, which he has never abandoned. When one takes up a new residence, in order to avail himself of the rights which such change of domicile confers, it must

be not so much with the intention of there remaining, but of the abandonment of his former domicile as a place of residence, and "excludes any definite intention to return to the place of the previous domicile." 19 *C. J.* 407; *In re Titterington,* 130 Iowa, 356, 358, 106 N. W. 761; *Walker v. Walker,* 125 Md. 649, 665, 94 A. 346. Like the seaman, "although he may return only at long intervals, or even be absent many years, yet if he does not by some actual residence or other means acquire a domicil elsewhere, he retains his domicil of origin." Chief Justice Shaw in *Thorndike v Boston,* 1 Metc. (Mass.) 246; *Howard v. Skinner,* 87 Md. 556, 558, 40 A. 379. And so here to all appearances, for all practical purposes, Dr. Scurlock has never changed his Washington domicile for a summer cottage on the Chesapeake, a year-round voting residence, but only fit for habitation in the summer time. It takes something more than a vote at a primary election to give permanency to a place of residence.

The defendants in their brief make the statement that the notice by registered mail was not left with the defendants, but with a member of their family. This is not borne out by the record, which shows a literal compliance with the statute. But even if this were true, the defendants have waived this alleged irregularity by a general appearance. *Belt v. Blackburn,* 28 Md. 227, 242; *Ritter v. Offutt,* 40 Md. 207, 211; *Ireton v. Baltimore,* 61 Md. 432, 434.

The plaintiff also defends against the motion to strike out the judgment on the ground of the defendants' inaction or laches. They do not pretend to say that they were unaware of the suit against them, which would, in effect, have been the case if they had not personally received the notices, and of which they could have availed themselves at any time by a special appearance in a motion to strike out the judgment, the personal notice being essential to the jurisdiction; the failure to provide for such actual notice having been the ground upon which Acts 1929, ch. 254, was declared invalid in *Grote v. Rogers,* 158 Md. 685, 149 A. 547, and brought about the passage of Acts 1931, ch. 70. It will also be ob-

served that in that case the procedure was a motion to quash the return of process.

The accident occurred August 2nd, 1931. Dr. Scurlock had an interview with the plaintiff the same day at the scene of the collision. Within a week he had written the plaintiff at least twice, and the following month the plaintiff saw Dr. Scurlock at his Washington residence, when the doctor told him that by advice of counsel he could not discuss the matter. Nothing further appears to have been done until October 27th, 1932, when suit was brought, and the following day the defendants notified by registered mail, and a copy of the process left with the Secretary of State of Maryland. Dr. Scurlock's father, who resides in Washington, is a lawyer. Asked if he had consulted him, and told by the court that he was not required to answer, but could waive the privilege if he saw fit, he responded, "I refuse to answer." The notice and the Act of 1931 gave him sixty days to defend the suit. The sixty days went by, and the notice ignored. Judgment by default was then promptly entered, and forty days later, on February 6th, 1933, an inquisition was had and judgment extended for $775. Execution was issued on March 21st, 1933, and twenty-seven days later, on April 17th, 1933, the defendants filed their motion to strike out the judgment. April 19th, a motion ne recipiatur was filed by the plaintiff, on the ground that the petition contained matter not apparent from the record, and should, therefore, be supported by an affidavit. The motion was granted, and on May 12th, 1933, a duplicate of the original petition with an affidavit was filed.

If a levy had not been made on the Highland Beach property, it is doubtful whether the defendants would have attacked the judgment at all. This statement is warranted by the fact that they did nothing until Dr. Scurlock was in danger of losing his property. The statute gave so much time for defense that no snap judgment could be taken against a nonresident. The Legislature must have had this in mind when it passed the act. Dr. Scurlock, if he knew anything, must have known that the plaintiff meant business, and that any property which he had in Maryland might be seized to satisfy

the plaintiff's claim for damages. Instead, he sat idly by until the thing he ought to have feared from the beginning actually happened. But it was too late; he had fooled away his day of grace. As said in *Young v. Citizens' Bank*, 31 Md. 66, 68: "Parties interested in judicial proceedings must exercise due vigilance, and take the earliest steps to avoid the effect of irregularity, otherwise they virtually waive the same and are concluded." When the Legislature fixed the limit of sixty days for defense on the merits, it must be assumed that it meant what it so plainly said. If a plaintiff has strictly followed the provisions of the statute, he is entitled to its benefits; if he has not done everything which the statute says he must do, in order to give the court jurisdiction, then his whole proceeding is subject to attack at any time. *Hess v. Pawloski*, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091; *Dwyer v. Shalek*, 232 App. Div. 780, 248 N. Y. S. 355.

The defendants also contend that the order of the Court of Common Pleas is not appealable because the motion to strike out the judgment was made within the term at which the judgment was entered; that is, the January term, 1933. 2 *Poe, Pl & Pr.*, sec. 389; *McLaughlin v. Ogle*, 53 Md. 610. The January term ends on the second Monday in May, which was after the original petition was filed, but before the same was filed under affidavit. If the refiling of the petition related to the time it was originally filed, it would be within the January term; but then it would conflict with the provisions of article 4, sec. 300 *et seq.*, of Code Pub. Local Laws (1930), within the provisions of which the defendants say it was not the intention of the Legislature to bring the Acts of 1931, ch. 70. We fail to find in that act anything that excepts it from the rule days of the courts of this state except the time between the receipt of notice by the defendant and the time within which he is required to appear; when that time comes the suit takes its regular course. The rule in this state, as stated by Judge Parke, in *Murray v. Hurst*, 163 Md. 481, 163 A. 183, 185, is that "a judgment by default becomes enrolled upon the expiration of the term of the circuit

court of the county at which it is entered, or, in the event the action is in one of the courts of Baltimore, upon the end of thirty days after the entry of the judgment by default. After enrollment, a judgment by default may not be set aside except upon the ground of either fraud, deceit, surprise, or irregularity." See cases there cited. The petition, in either event, was filed after enrollment, and entitles the plaintiff to an appeal.

Because the defendants do not appear to have abandoned Washington as the place of their residence, have waived the defects of service, if any existed, by their general appearance, and have been guilty of laches, and have not proved the judgment to have been fraudulently obtained, the order appealed from will be reversed.

*Order reversed, with costs.*