## MADDY *v.* JONES

[No. 104, September Term, 1962.]

174

*Decided December 7, 1962.*

*Motion for rehearing filed December 31, 1962, denied January 16, 1963, and opinion modified.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Leonard A. Orman* for the appellant.

*Richard C. Whiteford,* with whom were *Due, Nickerson, Whiteford & Taylor* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

The single question raised here is whether the lower court erred in its finding that the appellant, Ardieth Maddy, was not a resident of Maryland at the time of an accident between an automobile driven by the appellee, Jack Jones, and a motorcycle on which appellant was riding as a passenger, and consequently ineligible to obtain payment from the Unsatisfied Claim and Judgment Fund of a judgment which he recovered against Jones.

The forty-nine year old appellant, a native of West Virginia, had lived for many years in that State, with intervals of employment elsewhere. At the suggestion of his brother, Almo Maddy, a resident of Maryland working for Hallmen Enterprises, he came to Baltimore to take employment which had been offered by Mr. Hallmen, arriving on June 21, 1959, from Beckley, West Virginia, as a passenger on a motorcycle driven by another brother, Rudolph Maddy, a resident of West Virginia. Two days later, and five days before the job with Hall-

men was to commence, the accident above mentioned occurred on a Baltimore street, resulting in substantial injury to appellant.

Appellant filed suit in the Superior Court of Baltimore City against appellee, Jones, who was a non-resident and uninsured, obtaining a jury verdict and a judgment in the amount of $5,000. Having given, prior to suit, the notice of intention to make claim required by the Unsatisfied Claim and Judgment Fund Law, Code (1957 and 1962 Cum. Supp.), Art. 66½, Secs. 150-179, appellant, alleging that he was a resident of Maryland, filed application in the same proceedings for an order directing payment of his judgment from the Fund. Sec. 150 (g) defines a person qualified to recover from the Fund as follows:

"*Qualified person*" means a resident of this State or the owner of a motor vehicle registered in this State or a resident of another state, territory or federal district of the United States or province of the Dominion of Canada, or foreign country, in which recourse is afforded to residents of this State, of substantially similar character to that provided for by this subtitle." (Sec. 150 (g) was amended in 1961 in a manner not material here.)

It was conceded that appellant did not own a motor vehicle registered in Maryland, and he did not claim to reside in a state having a similar law. (West Virginia has no such statute.) The Unsatisfied Claim and Judgment Fund Board filed an answer denying appellant's right to payment from the Fund on the ground that he was not a resident of Maryland, and hence not a "qualified person", at the time of the accident. The lower court, after hearing testimony, passed an order denying the application for payment, finding that appellant was not a resident of Maryland when he suffered the injury. This appeal is from that order.

After the accident appellant remained at the home of his brother, Almo, and, due to his injuries, was delayed in commencing his employment at Hallmen Enterprises until September, 1959. He testified that he later found himself so in-

capacitated from those injuries that he was unable to perform the work required, and he left Hallmen Enterprises in February or March, 1960. Mr. Hallmen testified that this termination of employment was mutually agreed upon by appellant and himself because appellant "just didn't feel right." Appellant said that subsequently he took some part-time work in Baltimore and in Washington, D.C., staying in Baltimore during the whole time either at the homes of his brother or nephew, or in one or the other of two apartments which he rented. He testified that when he came to Maryland in 1959 he intended to make Baltimore his home.

Appellant claims that he became a Maryland resident when he entered the State with the intention of becoming an employee of Hallmen Enterprises. On the other hand, the Fund Board urges that the lower court was not in error in finding him a non-resident at the time of the accident.

This inquiry as to whether or not the trial court erred in finding that the appellant was not qualified as a resident under Sec. 150(g) presents us with a case of first impression.

The right of an aggrieved party to appeal any final order, decree or judgment under the provisions of the Act has been effective only since March 23, 1962, when Sec. 177A was enacted. Cf. *Nicholas, Adm'r v. Galford,* 227 Md. 347, 176 A. 2d 768 (1962). Therefore, it is necessary to examine the import of the residence requirement. As stated in *United States v. Whitcomb,* 200 F. Supp. 249, (D.C. Md., 1961), the term "resident" is not defined in the Maryland Unsatisfied Claim and Judgment Fund statute, and the general definition of the term in Code (1957), Art. 66½, Sec. 2, does not apply to that statute.

The Maryland Act was patterned after the earlier New Jersey law, New Jersey Statutes Annotated (1961 ed.), Title 39, Chap. 6, Secs. 61-91. The courts of that State have had occasion in only a few cases to consider the residence requirement. The term "resident" is also undefined in the New Jersey statute. The Superior Court of New Jersey, Law Division, in *Collins v. Yancey,* 151 A. 2d 68 (1959), held a native of Virginia, who had lived and worked in New Jersey for

five months before being injured in an accident, to be a "qualified person" under the statute, observing (at p. 71):

> "* * * In construing the meaning of the term 'qualified person' as set forth in the Unsatisfied Claim and Judgment Fund Law, it is necessary to consider the objectives and the intent of the Legislature thereunder. The statute is social legislation and is to be liberally construed in order to advance the remedy, with due regard for the proper protection of the Fund against fraud or imposition, so that *all who are within the defined classification* may receive relief as a matter of social policy which is the underlying motivation for the passage of the statute. *Giles v. Gassert;* 23 N.J. 22, 127 A.2d 161 (1956). It is generally recognized that there is an economic hardship resulting to *those persons referred to in the statute,* who, without any fault on their own part, suffer losses through motor vehicle accidents as a result of the negligence of another, and for which losses there is no compensation resulting through any insurance coverage. It is reasonable to contemplate that such losses in so many cases have an adverse effect upon the public welfare in requiring the furnishing, at public expense, of hospital, medical and welfare care and attention." (Emphasis supplied.)

In the later New Jersey case of *Continos v. Parsekian,* 171 A. 2d 663 (N. J. Super., App. Div., 1961), the court found that a student, living for the summer in the state, who left the state to return to college in the fall, was not such a resident as to qualify under the statute. In a case decided this year, the same court appears to express a cautionary note and to indicate that it will adopt a literal approach in interpreting the New Jersey Act. In *Parrot v. Chiselko,* 180 A. 2d 710 (N. J. Super., App. Div., 1962), a case dealing with the requirement of notice to the Board of intention to make claim, the court, after referring to earlier cases, said (at p. 712):

> "The liberality of construction accorded to the

statute accents the scope and purposes of the enactment as social legislation, but *affords no substitute for proof or evidence necessary for compliance with its terms or conditions.* See Szczesny v. Vasquez, 71 N. J. Super. 347, 358-359, 177 A. 2d 47 (App. Div. 1962). The admonition that due regard must be given to the protection of the Fund, gives recognition to the fact that it is derived from levies legislatively imposed on registrants of motor vehicles, insured and uninsured, and insurers authorized to write automobile liability insurance in this State.

"It is inevitable that these two basic considerations may become competing factors in given sets of circumstances. Yet, it is important that the court strive to keep them in balance by *literal interpretation of the act,* leaving to the Legislature its exclusive function to amend or supplement the law, if in the light of experience such action is deemed necessary to accomplish the fundamental legislative purposes." (Emphasis supplied.)

In addition to Maryland and New Jersey, North Dakota has established an Unsatisfied Judgment Fund, and New York has as its equivalent a Motor Vehicle Indemnification Corporation. However, no decision of either of the latter two states interpreting the residence requirement has been called to our attention.

This Court has often recognized the difficulties involved in defining the words "residence", "domicile", and similar terms. In the course of an exhaustive review of the authorities, Judge Prescott, for the Court, said in the recent case of *Gallagher v. Bd. of Elections,* 219 Md. 192, 148 A. 2d 390 (1959), that where there is no statutory definition of such terms, "all Courts seem to agree that they must be construed in accordance with the context and the purpose of the constitution, charter, statute or instrument in which they are found." (at p. 202 of 219 Md.). In the same opinion (at pp. 206-207 of 219 Md.) Judge Prescott pointed out that the Maryland decisions have given the term "residence", for political or voting purposes,

the legal significance of "domicile", as have the cases dealing with the jurisdictional requirements under divorce statutes. A domicile, as defined in *Shenton v. Abbott*, 178 Md. 526, 530, 15 A. 2d 906 (1940), is "* * * that place where a man has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning". *Shaeffer, et al. v. Gilbert*, 73 Md. 66, 20 Atl. 434 (1890), mentions the legal and technical sense of domicile, by which one's civil status and the rights of persons and property are determined.

It is our opinion that the design and the terms of the Act require the conclusion that Sec. 150 (g), defining a "qualified person" as a "resident of this State", contemplates one who possesses or has acquired a domiciliary status, in the legal sense, in this State, as distinguished from one who merely has a temporary abode in Maryland. It seems obvious that the Legislature intended, in enacting this statute, primarily to protect its own citizens, particularly those least able financially to bear the loss or injury inflicted by irresponsible or unidentified motorists, many of whose victims otherwise would require medical and welfare attention at public costs. A further significant factor is the reciprocity provision in Sec. 150 (g). This provision (which uses the words "resident" and "residents") could logically and effectively apply, we feel, only to domiciliaries of Maryland and of the reciprocating jurisdictions, and not to temporary sojourners. Our conclusion that "resident" must be equated with "domiciliary" in this statute is fortified by the fact that the Fund is produced by taxes imposed on all motorists, insured as well as uninsured, whose vehicles are registered in Maryland, and on liability insurance premiums collected in this State. Transients, unless covered by portions of Sec. 150 (g) other than the residence provision, would not seem to come within the scheme of this legislation.

We think, as did the New Jersey court, that the Unsatisfied Claim and Judgment Fund Law is remedial legislation which should be construed liberally in order to effectuate its

beneficial purpose, but that due regard must also be given to the protection of the Fund against fraud or abuse. We also believe that the liberality of construction accorded the statute cannot substitute for proof required under it.

Judge Prendergast, who presided over the original trial of the suit between the appellant and the nominal appellee, Jack Jones, as well as the hearing on the appellant's application for payment from the Fund, found as a fact that the appellant was not a Maryland resident within the meaning of the Act. He concluded that:

> "This Court would be naive indeed to accept his unsupported statement of intention. On the contrary, it is found that he was an itinerant workman who claims to be a resident of Maryland only for the purpose of recovering under the Unsatisfied Claim and Judgment Fund Law."

We think the facts in the record are sufficient to support Judge Prendergast's conclusion. While appellant insisted that he had the intention of settling permanently in Maryland when he came here two days before the accident, one's intention as to his place of domicile may be shown more satisfactorily by acts than by declarations, as was pointed out in *Shenton v. Abbott, supra* (at p. 533 of 178 Md.).

The following facts were in evidence. Appellant, a resident of West Virginia, was registered with a draft board in that state and was drafted into the army in the second World War. After he was discharged, he worked at different times for Hallmen Enterprises and the Baugh Chemical Company, both in Baltimore, returning after such employment to his home in West Virginia. Later, in about 1956, he worked in Ohio as a paint sprayer, registering to vote in that state and obtaining a motor vehicle operator's license there. He left that job and went back to West Virginia. In 1959 he came to Baltimore to take employment, but there is no evidence in the case that he ever had his possessions sent to Baltimore from West Virginia. He admitted that he did not get a Maryland driver's

license, that he did not register to vote, that he had no full-time work after leaving Hallmen Enterprises, and that he did not collect unemployment compensation in Maryland when not working. Efforts made in cross-examination to ascertain the exact addresses of the two apartments at which appellant said he lived after leaving his brother's and nephew's homes, his places of employment after quitting Hallmen Enterprises, and the amount of time spent within and outside Maryland after the accident, were unfruitful.

We think Judge Prendergast, in determining whether appellant had abandoned his West Virginia domicile, and acquired one here, was entitled to give significance to the pattern established by appellant in the past—of returning to his native state after each period of employment elsewhere. The Judge also—properly, we think—gave considerable weight to appellant's statement on the witness stand that if he hadn't had a promise of a job when he came to Baltimore he would have taken any "decent" job *wherever it was available*. The Judge was not required to believe appellant's statement that he intended to live permanently in Baltimore.

*Hall, Admx. v. Morris,* 213 Md. 396, 132 A. 2d 113 (1957), is a case in which many more facts were alleged in an effort to establish domicile in Maryland than in the instant case. One Harp, an operator of amusement concessions during the summer season in Maryland, died in Maryland. He lived in Maryland approximately half the year and spent his remaining time at a Florida home. There was evidence in the case that he made statements after his wife's death that he would not stay in Florida, that he gave away some personal effects from the Florida house, that he brought his auto loaded with household goods to Maryland, that he kept valuable papers in Maryland, that he notified a corporation in which he held stock of his change of address to Maryland, and that he had business plans keeping him in Maryland. Despite this evidence, this Court affirmed the trial judge's decision that no domicile had been established. The Court said (at p. 403 of 213 Md.):

> "We find no manifestation of any intent to make it their home. It was a temporary abiding place which they occupied for their business convenience."

Finding no error below, we will affirm.

*Order affirmed; costs to be paid by appellant.*