672 A.2d 116

**BEST DRYWALL, INC.**

v.

**Herman BERRY, Jr., et ux.**

**No. 569, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Feb. 28, 1996.

382

David C. Gaskill, Ocean City, for Appellant.

Raymond D. Coates, Jr. (Coates, Coates & Coates, on the brief), Berlin, for Appellees.

Argued before DAVIS, HARRELL and MURPHY, JJ.

HARRELL, Judge.

This efficiently presented appeal has been taken from a judgment of the Circuit Court for Worcester County (Eschenburg, J.). The parties utilized the vehicle of the Maryland Rule 8–206(b) prehearing conference to reach agreement on the sole issue to be considered by us:

Whether a secondary vacation home is "a single family dwelling being erected on the land of the owner for his own residence" within the meaning of Md.Code, Real Property Article, § 9–104(f)(3).

Relying on stipulated facts that were presented also to the circuit court, the parties invoked Rule 8–413(b) to submit to us a statement of the case and essential facts, in lieu of the entire record or a joint record extract. We have only slightly augmented,[1] rephrased, and reordered their statement in order to facilitate the chronological or narrative flow of this opinion.

## FACTS

Appellees, Herman and Linda Berry, are legal residents of New Jersey where they maintain their primary residence. They purchased a single family, residential building lot in the

---

1. Any factual supplementation was gleaned from the circuit court's 3 February 1995 Opinion and Order in this matter.

Ocean Pines development in Worcester County, Maryland, and engaged a local general contractor, Shore Development, Ltd. ("Shore"), to construct for their use a vacation home on that lot.

Shore entered into a subcontract with Best Drywall, Inc. ("Best Drywall"), appellant, in connection with constructing the dwelling on appellees' Ocean Pines lot. On 27 September 1994, before construction on the Berrys' vacation home was completed, Shore ceased work and did not thereafter complete the remaining work.[2] At that time, the Berrys were current in their payments to Shore pursuant to their contract. Shore, however, owed appellant $7,425 for its labor and materials.

Appellant gave timely notice to appellees of its intent to create a mechanic's lien on the Berrys' Maryland property and thereafter timely filed a petition in the circuit court to establish a lien. Appellees defended against the lien by asserting the "residential exception" found in § 9–104(f)(3) of the Md. Code, Real Property Article.[3] To this, appellant responded that the statutory limitation only applied to a principal residence, not a secondary, vacation home.[4]

---

**2.** The Berrys ultimately engaged and paid another general contractor to complete the work on the residence.

**3.** § 9–104. **Notice to owner by subcontractor.**

\* \* \* \* \* \*

*(f) Payments by owner to contractor after notice; limitation on lien against certain single family dwellings.*

\* \* \* \* \* \*

(3) Notwithstanding any other provision of this section to the contrary, the lien of the subcontractor against a single family dwelling being erected on the land of the owner for his own residence shall not exceed the amount by which the owner is indebted under the contract at the time the notice is given.

All statutory references are to Maryland Code (1996 Repl.), Real Property Article.

**4.** The stipulated facts do not disclose if the Berrys planned to rent the vacation home to others. The pertinent stipulation stated that "[a]ppellees planned to use this dwelling as *a* secondary vacation home." (Emphasis supplied). For purposes of our holding, we shall assume that the dwelling will not be used to generate rental income.

Judge Eschenburg, in a written Opinion and Order, dated and filed on 3 February 1995, denied the request to establish the lien, ruling, in pertinent part, as follows:

Seizing on the definition of "resident" in voter registration cases, [Appellant] argue[s] that the Legislature uses the term in statutes to mean domicile, unless a contrary intent is shown. Courts have applied this restrictive definition to the construction of other, specific statutes. *See, e.g., Harrison v. Harrison,* 117 Md. 607, 612, 84 A. 57 (1912) (Varying significations of "residence" found; construed to mean domicile in a divorce statute); *Maddy v. Jones,* 230 Md. 172, 179–180, 186 A.2d 482 (1962) ("Residence" means domicile in state Unsatisfied Claim and Judgment Law). In both cases, though, the restrictive construction was suggested by the context of the statute. The Court in *Harrison* found the construction to comply with legislative disapproval of divorce. 117 Md. at 612[, 84 A. 57]. The Court in *Maddy v. Jones* looked to the need to protect and compensate the citizens of Maryland, coupled with the statute's reciprocity to other states' statutes, in giving a narrow construction to "residence." 230 Md. at 179–180[, 186 A.2d 482].

The Court of Appeals also noted in *Maddy v. Jones* that the statute was remedial in nature and otherwise would be broadly construed. *Id.* The residential exception, too, is remedial, making a broad construction of "residence" appropriate. More significantly, this Court is compelled to use a broader construction by the specific language of the statute. The exception offers protection to the owner of a "single family dwelling being erected on the owner's land for his own residence." Code, § 9–104(f)(3). Plaintiffs effectively seek to restrict the "residence" to a "principal residence," as Plaintiffs' Memoranda make explicit. The definition of "residence" derived from voter registration cases, is not applicable in mechanic's lien cases as the statute does not, by its terms, limit itself to the principle residence or domiciliary residence of the owner. This Court therefore holds that the

residential exception of § 9–104(f)(3) applies to the second-ary, vacation home.

(Some internal citations omitted.)

## DISCUSSION

As a template to apply to our analysis of the question before us, we recall what Judge Rosalyn B. Bell wrote for this Court in *Grubb Contractors v. Abbott*, 84 Md.App. 384, 579 A.2d 1185 (1990), when we were called upon to fathom the meaning of "single family dwelling" as used in § 9–104(f)(3):

> "Single family dwelling" is not defined in the mechanic's lien statute; nor did we find any cases in Maryland that define the term. We need, therefore, to ascertain the meaning the Legislature attached to that term as used in the statute.

> In search of that meaning, we need to ferret out the " 'general purpose, aim or policy' " of the statute. *Kaczo-rowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987) (citation omitted). When interpreting legislation, we look to the plain meaning of the words and, if clear, that generally completes our inquiry. The plain meaning rule, however, is not inflexible. As the Court of Appeals observed in *Tucker v. Fireman's Fund Insurance Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986):

> > "We also recognize the rule that where a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. In such circumstances, the court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." (Citations omitted.)

Continuing its examination of the statute in question, the Court in *Kaczorowski,* 309 Md. at 514–15, 525 A.2d 628, explained:

"[T]he plain-meaning rule does not force us to read legislative provisions in rote fashion and in isolation. What we are engaged in is the divination of legislative purpose or goal. Indeed, as we have explained, the plain-meaning rule 'is not a complete, all-sufficient rule for ascertaining a legislative intention. . . .' The 'meaning of the plainest language' is controlled by the context in which it appears. The aim or policy of the legislation, against which we measure the words used, is 'not drawn . . . out of the air; it is evinced in the language of the statute as read in the light of other external manifestations of that purpose.' Or as Justice Holmes once put it, 'the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down.' More recently, the Supreme Court has stated the proposition thus:

'We agree . . . that "[t]he starting point in every case involving construction of a statute is the language itself." But ascertainment of the meaning apparent on the face of a single statute need not end the inquiry. This is because the plain-meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists. The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have this literal effect.'

*Watt v. Alaska,* 451 U.S. 259, 265–266, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80, 88 (1981) [citations and footnote omitted]." (Some citations omitted.) (Brackets in original.)

In *Ridge Sheet Metal Co. v. Morrell,* 69 Md.App. 364, 517 A.2d 1133 (1986), we had occasion to consider Md.Real Prop.Code Ann. § 9–104(f)(3) (1974, 1988 Repl.Vol.), but

from the perspective of the amount of the indebtedness. In looking at the legislative intent, we stated:

"Turning to the legislative intent, we glean from the preamble to chapter 251 quoted previously that the Legislature intended in limited situations to shift the risk of loss from the owner of a single family dwelling to the subcontractor. The enactment of § 9–114 under chapter 251 in 1982 further evidences the Legislature's intent to ameliorate owner liability. This new section indicates that the burden for negligent paying will no longer be borne by the owner."

*Ridge Sheet Metal,* 69 Md.App. at 374, 517 A.2d 1133.

84 Md.App. at 390–92, 579 A.2d 1185.

As in both *Grubb Contractors v. Abbott* and *Ridge Sheet Metal Co. v. Morrell,* we are confronted here with a contextual effort to determine the scope of the legislature's intent to extend some protection against mechanic's liens to single family dwellings. The different spin of the instant case, however, revolves around whether the General Assembly meant to limit this protection to the owners' sole, primary, and legal residence. The analyses undertaken in *Grubb Contractors* and *Ridge Sheet Metal* are instructive here.

The pertinent question in *Grubb Contractors* was whether improvements made to the home of Mr. and Mrs. Abbott ("the Abbotts"), that made room for Mr. Abbott's mother· at the residence by in part installing a one piece unit in a small, closet sized space which provided for the necessities of simple food preparation, rendered the dwelling not a single family one within the meaning of § 9–104(f)(3). *Grubb Contractors,* 84 Md.App. at 390, 394, 579 A.2d 1185. The Court, in the opening sentence of its opinion, felt compelled to observe that "[i]n this appeal, we define a single family dwelling as it appears in the mechanic's lien law, but only as it is used in that law." *Id.* at 386, 579 A.2d 1185. Turning to the first issue confronting it, the presence of Mr. Abbott's mother in the dwelling, after reciting the legislative and caselaw history provided *supra,* the Court held that

in seeking to protect the owner of a single family dwelling the Legislature sought to protect the family by limiting the exposure of their residence to the potential liability of a mechanic's lien as opposed to protecting the commercial enterprise of multiple family dwellings.

\* \* \* \* \* \*

[T]he traditional family ... has never excluded aged parents, many of whom are dependent in some way—economic, physical or emotional—or can reasonably be expected to become so. The inclusion of Mr. Abbott's mother as a permanent resident does not make this two families, but a single family, with a single dwelling, and the Abbotts fall within the class of owners the statute sought to protect.

*Id.* at 392–93, 579 A.2d 1185.

As to the kitchenette issue, though acknowledging the existence of zoning ordinances and caselaw in support of the subcontractors's argument "that, where an addition or a full floor of a dwelling consists of rooms for living, sleeping, bathroom and kitchen in both parts with a separate entry, the dwelling consists of two units," the Court again pointed out that its task was to interpret the state's mechanic's lien law only. *Id.* at 393–94, 395, 579 A.2d 1185. Focusing on the *de minimis* size of the kitchenette at issue, the Court adopted, for the purposes of defining the term "single family dwelling" as used in § 9–104(f)(3), a functional, use-driven definition borrowed from a California case, *Brady v. Superior Court,* 200 Cal.App.2d 69, 19 Cal.Rptr. 242, 247 (Cal.Dist.Ct.App.1962). *Id.* at 395–96, 579 A.2d 1185. Specifically, this definition of "single family dwelling" provided in part:

The word must ... refer to the *use* of the premises as a family, or in the manner of a family. Such family use, again, would and must be, a single and common use of the premises.

*Id.* at 396, 579 A.2d 1185 (Emphasis in original). Pursuant to that definition, the Court concluded that the Abbotts' home, as improved, met the statutory definition of a "single family

dwelling" entitled to the benefit of the statutory limitation. *Id.*

*Ridge Sheet Metal* is of greater import to the instant case. As is present here, the homeowners in *Ridge Sheet Metal,* the Morrells, were current in their contractually-mandated payments to their general contractor at the time the general contractor defaulted under the contract, leaving the home unfinished and the particular subcontractor unpaid. Unlike the situation in this case, however, the homeowners in *Ridge Sheet Metal* still had in their possession, as contractual retainage, approximately 20% of the total contract price. 69 Md. App. at 367–68, 517 A.2d 1133. Ridge Sheet Metal, the unpaid subcontractor, asserted a mechanic's lien against the Morrells' property, contending, among other things, that the unpaid retainage constituted an "indebtedness" under the general contract at the time its notice of intent to establish the lien was given, within the meaning of § 9–104(f)(3). *Id.*

In holding that, under § 9–104(f)(3), a subcontractor may only establish a lien up to the amount of a legally enforceable obligation owed by the owner to the prime contractor, the Court considered, among other things, the legislative intent behind the statutory provision and the relative "manifest fairness" of its interpretation of the statute in light of the purposes of the statutory scheme. *Id.* at 372–73, 517 A.2d 1133. With regard to legislative intent, the Court divined from the passage of Chapter 251 of the Laws of 1982 that the purpose of § 9–104(f)(3) was to shift, in limited situations, "the risk of loss from the owner of a single family dwelling to the subcontractor." *Id.* at 374, 517 A.2d 1133.

Ridge Sheet Metal argued that such an interpretation would be manifestly unfair as it would leave the entity generally intended to be protected by the enactment of the mechanic's lien law, the subcontractor, "unprotected from the impecunious prime contractor who breaches and then otherwise uses the payment rather than paying the portion due over to the subcontractor." *Id.* Judge Rosalyn B. Bell, speaking for us in *Ridge Sheet Metal* as she did in *Grubb Contractors,* re-

sponded that adoption of Ridge Sheet Metal's argument would not limit the owner's liability, as the legislature intended, but instead would extend it. *Id.* She pointed out further:

> [T]he subcontractor can best bear the risk of loss in this type of situation. One who is in the trade is clearly in a better position than an owner to know whether the contractor is in a financially unstable position. Late payments to other materialmen and rumors in the trade are better known to the subcontractor or are more easily discoverable by the subcontractor than the homeowner. Increasing the risk of double payment for the single family dwelling owner may well dampen the enthusiasm of the prospective house builder.

*Id.* at 374–75, 517 A.2d 1133.

With the benefit of the foregoing in mind, we turn to the case before us. In § 9–104(f)(3) and elsewhere in the mechanic's lien law, the term "residence" is undefined. Appellant, relying on statutory contexts other than the mechanic's lien law that define "domicile" in essentially terms that mean a dwelling in a particular location where one resides with the intent to make it one's fixed and permanent home for that specific purpose, would have us equate "residence" with "domicile" and treat the terms synonymously. *See, e.g., Roberts v. Lakin,* 340 Md. 147, 153, 665 A.2d 1024 (1995) (construing "resided" or "resident" as equivalent of "domiciled" or "domiciliary" for purposes of statutory residency prerequisite to run for public office from a particular geographic district); *Dorf v. Skolnik,* 280 Md. 101, 109–10, 371 A.2d 1094 (1977) (interpreting the State Democratic Party's constitutional requirement that a member of its State central committees be a "bona fide resident" of specific legislative district); *Maddy v. Jones,* 230 Md. 172, 174–75, 186 A.2d 482 (1962) (interpreting statutory prerequisite limiting recovery from Unsatisfied Claim and Judgment Fund to a "resident of this State"); *Shenton v. Abbott,* 178 Md. 526, 529, 15 A.2d 906 (1940) (interpreting phrase in probate statute where letters of administration shall be granted where decedent had his "mansion house or residence"); *Wagner v. Scurlock,* 166 Md. 284, 291, 170 A. 539

(1934) (determining residence or non-residency for purposes of a statute directing different methods of service of process involving motor vehicle accidents or collisions); *Harrison v. Harrison*, 117 Md. 607, 612, 84 A. 57 (1912) (evaluating a party's jurisdictional challenge in a divorce suit where the statute required that "any person desiring a divorce shall file his or her bill in the court either where the party plaintiff or defendant resides"). Yet, when one reads these cases, distinctions are found that make them less compelling than appellant argues them to be. For example, in *Wagner*, the underlying purposes of construing "residence" as meaning "domicile" for *"political or voting purposes"* was "not merely for the purpose of identifying the voter, and as a protection against fraud, but also that he should become in fact a member of the community, and, as such, have a common interest in all matters pertaining to its government." *Wagner*, 166 Md. at 291–92, 170 A. 539 (Emphasis added) (quoting *Howard v. Skinner*, 87 Md. 556, 559, 40 A. 379 (1898) and *Shaeffer v. Gilbert*, 73 Md. 66, 70, 20 A. 434 (1890)). In *Harrison*, the Court reasoned:

> *The term residence is one which is used to signify different things. Sometimes it is to be construed as meaning the domicil [sic] of a party, and in others simply to indicate an abiding place for the time being without reference to domicil. The same term is to be found in the statute of this State relating to the right to be registered, and in all of those cases the construction has been uniform, giving to the term the legal significance of domicil. No reason is apparent why a more lax construction should be given to the word as it is used in the statute with regard to divorce, in view of the long-settled policy of this State to discourage rather than to encourage such proceedings.*

117 Md. at 612, 84 A. 57 (Internal citations omitted; emphasis supplied).

We glean from these cases, however, that "residence" does not always mean "domicile." Instead, its meaning is dependent on its contextual use. When the term is used in a statute, its context can be established by evaluating the

purposes of the statute. The purposes of the statute in which it appears largely establish the context. In that vein and following the lead of *Grubb Contractors* and *Ridge Sheet Metal,* we are of the opinion that the legislature's intent in using the word "residence" in § 9–104(f)(3) of the mechanic's lien law was contrary to equating it with the term "domicile." We explain.

*Black's Law Dictionary* (6th ed., 1990), at 1308–09, defines "residence" as follows:

> Place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; house where one's home is, a dwelling home . . . .
>
> As "domicile" and "residence" are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile. "Residence" is not synonymous with "domicile," though the two terms are closely related; a person may have only one legal domicile at one time, but he may have more than one residence.
>
> In certain contexts the courts consider "residence" and "domicile" to be synonymous . . . while in others the two terms are distinguished.

(Internal citations omitted).

A similar point was made in *T.P. Laboratories, Inc. v. Huge,* 197 F.Supp. 860, 863 (D.Md.1961) (quoting *Commissioner of Internal Revenue v. Swent,* 155 F.2d 513, 515 (4th Cir.1946) *cert. denied,* 329 U.S. 801, 67 S.Ct. 491, 91 L.Ed. 685 (1947)):

> "The word 'resident' (and its antonym 'non-resident') are very slippery words, which have many varied meanings. Sometimes, in statutes, residence means domicile; sometimes, as in the instant case, it clearly does not. When

these words, 'domicile' and 'residence,' are technically used by persons skilled in legal semantics, their meanings are quite different. This distinction is clearly set out in *Matter of Newcomb's Estate*, 192 N.Y. 238, 250, 84 N.E. 950, 954:

"As 'domicile' and 'residence' are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning, but they are not identical terms, for a person may have two places of 'residence,' as in the city and country, but only one 'domicile.' 'Residence' means living in a particular locality, but 'domicile' means living in that locality with intent to make it a fixed and permanent home. 'Residence' simply requires bodily presence as an inhabitant in a given place, while 'domicile' requires bodily presence in that place and also an intention to make it one's domicile."

From *Grubb Contractors*, we glean that we need not feel compelled, in discerning the definition of a term in the mechanic's lien statute, to cast about in other statutory contexts for the same or similar word or phrase. We also apply from *Grubb Contractors* and *Ridge Sheet Metal* the principle that, contrary to the general purpose of the overall mechanic's lien statute to protect subcontractors and materialmen, § 9–104(f)(3) clearly has as its purpose an intent to shift responsibility for insuring payment of a subcontractor from the owner of the dwelling to the prime contractor, *i.e.*, to limit the subcontractor's ability to lien the single family residence. Consistent with the reasoning in *Ridge Sheet Metal* that the subcontractor's broad reading of "indebted" in § 9–104(f)(3) was inimicable to the intended limiting effect of that particular section of the statute, we conclude here that Best Drywall is better able than appellees to bear the risk of loss in this type of situation also. Appellant, a business operating in Worcester County, Maryland, is in a better position than appellees, based on geographic proximity and the greater ability to become aware of current events within the trade, to stay abreast of the Maryland prime contractor's business and financial status and to take direct action to protect its own interest. Thus, our interpretation of "residence" in § 9–

104(f)(3) to include a single family dwelling that is the owner's secondary, vacation home, works no unintended manifest unfairness upon appellant.

We think also that, had the legislature intended to distinguish between a primary and a secondary residence in parsing out the protection afforded by the statutory limitation on a subcontractor's ability to lien a single family dwelling, it would have explicitly done so. That it has not reinforces our conclusion.

The circuit court, not erring in its judgment, shall be affirmed.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**