TRACEY, ET AL. *v.* UNSATISFIED CLAIM AND
JUDGMENT FUND, ET AL.

[No. 59, September Term, 1969.]

*Decided December 2, 1969.*

The cause was argued before BARNES, MCWILLIAMS,
FINAN and SINGLEY, JJ. and CHARLES E. ORTH, JR., As-
sociate Judge of the Court of Special Appeals, specially
assigned.

*John D. Hackett,* with whom was *William H. Zinman*
on the brief, for appellants.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, C. Mac-Nair Speed and Lord, Whip, Coughlan & Green* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

This case involves the interplay between the Unsatisfied Claim and Judgment Fund Statute of Maryland, Maryland Code (1957, 1967 Repl. Vol.) Art. 66½, § 150 et seq. (the Maryland Fund) and that of New Jersey, N.J.S.A. 39:6-61 (1961) (the New Jersey Fund).[1] The appellants, James Tracey and Mattie Ames, residents of New Jersey, brought suit against Ruby Mae Bracey, a resident of Maryland, for damages for injuries they had sustained in an accident in Maryland involving a car owned and operated by Mrs. Bracey in which the appellants were passengers. When judgments of $1,250 and costs entered in favor of each of the plaintiffs against Mrs. Bracey were not paid, the appellants sought to have their judgments satisfied from the Maryland Fund. From an order denying their petition, this appeal was taken. We shall affirm.

Maryland Code Art. 66½, § 158 permits "any qualified person" who recovers an unsatisfied judgment in excess of $100 for injuries arising out of the use of an automobile to seek payment from the Maryland Fund. Art. 66½, § 150 (g) defines a "qualified person:"

> "* * * [A] resident of this State or the owner of a motor vehicle registered in this State *or a resident of another state,* territory or federal district of the United States or province of the Dominion of Canada, or foreign country, *in which recourse is afforded to residents of this State, of substantially similar character to that*

---

1. The Maryland statute is patterned on that of New Jersey. *Unsatisfied Claim and Judgment Fund Board v. Holland,* 241 Md. 294, 216 A. 2d 525 (1966); *Maddy v. Jones,* 230 Md. 172, 186 A. 2d 482 (1962).

*provided for by this subtitle * * *."* (emphasis added).

Recovery can be had only by a "qualified person." See *United States v. Whitcomb,* 314 F. 2d 415 (4th Cir. 1963) *rev'g* 200 F. Supp. 249 (D.Md. 1961).

The appellants urge that the lower court erred when it dismissed their petition on the ground that they were not "qualified persons" entitled to satisfaction of their judgments from the Maryland Fund.

The record in this case is a meager one. Apart from the pleadings and brief opinion of the court below, the only matter of substance is the testimony of Ruby Mae Bracey, taken at the hearing on the appellants' petition. However, counsel in their briefs have included additional facts, which are apparently conceded, and provide a framework within which the case can be considered. The source of much of this is the transcript of testimony taken in the Superior Court of Baltimore City (Sodaro, J.) in an earlier damage suit which ended in a mistrial. Some of this testimony has been printed in an appendix to the appellees' brief. For the purposes of this opinion we shall assume that this material, which is not a part of the transcript in the present case, is properly before us, because both parties have drawn upon it for their briefs and in their arguments.

There was testimony in the earlier case from which the jury could have found, in considering the question of liability, that the appellants, Mr. Tracey and Miss Ames, residents of Paterson, New Jersey, came to Maryland in September, 1961, to visit Richard and Ruby Mae Bracey, who were relatives of Mr. Tracey and that within about three hours of their arrival the group agreed to take a trip to North Carolina using a car owned and operated by Mrs. Bracey.

The nature of the arrangement came from Mrs. Bracey's testimony at the hearing on the appellants' petition:

"Q: You recall the trip that was taken to North Carolina in September, 1961?

"A: I do.

"Q: With the Traceys [2] and your husband?

"A: Yes.

"Q: What was the arrangement between you and your husband and the Traceys with regard to the expenses of the automobile and how to get to North Carolina?

"A: Well, James was supposed to bear the expenses.

"Q: James is who?

"A: Tracey.

"Q: James Tracey. Go ahead.

"A: Yes.

"Q: He was to bear the expenses of what?

"A: Of everything.

"Q: All right.

"A: Of the trip."

This fragmentary testimony, which was neither amplified nor rebutted at the hearing on the petition, is all that was before the lower court and before us as to the arrangement which underlay the trip. It seems to be conceded that the group stopped for gasoline shortly after leaving the Braceys', and that the accident occurred 15 or 20 minutes later. There is nothing in the record which even intimates who paid for the gasoline.

Implicit in the conclusion reached by the lower court is the finding that Mr. Tracey and Miss Ames were guest occupants of Mrs. Bracey's car. On the record before us, there can be no question as to Miss Ames' status, and we cannot say that the finding as regards Mr. Tracey is clearly erroneous. Maryland Rule 886 a.

The significance of this finding lies in the fact that the court below grounded the result reached on a narrow concept of reciprocity: If Mrs. Bracey, a resident of Maryland, could not have recovered from the New Jersey Fund for injuries sustained in New Jersey while a guest oc-

---

2. At the time of this hearing Miss Ames was married to Mr. Tracey.

cupant in a car owned and operated by Miss Ames or Mr. Tracey, who were residents of New Jersey, Miss Ames and Mr. Tracey cannot recover from the Maryland Fund.

Until 14 January 1962,[3] the New Jersey Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-70 provided:

> "The Court shall proceed upon such application in a summary manner, and upon the hearing thereof, the applicant shall be required to show
>
> * * *
>
> "(c) He was not at the time of the accident, a guest occupant, riding in a motor vehicle owned or operated by the judgment debtor and is not the personal representative of such a guest occupant."

In interpreting the guest exclusion [4] in cases involving claims against the New Jersey Fund, the New Jersey courts have distinguished between the person who rides gratuitously, at the express or implied invitation of the motorist or with his permission or acquiescence, *Casey v. Cuff,* 46 N. J. Super. 33, 133 A. 2d 659 (1957), and the person who is being transported in furtherance of an interest shared with the driver of the car, even though no direct payment is involved. *Moss v. Govan,* 52 N. J. Super. 550, 146 A. 2d 227 (1958).

In *Moss v. Govan, supra,* 52 N. J. Super. at 554, 146 A. 2d at 229, New Jersey accepted the passenger-guest distinction found in Restatement, *Torts* § 490, Comment a (1934) at 1272-73:

> "Distinction between *'passenger'* and *'guest'.*
> The phrase 'passenger in a vehicle' is used to

---

3. The repeal of N.J.S.A. 39:6-70 (c) became effective on 15 January 1962.

4. New Jersey has no automobile guest statute, but applies the rule that a guest may recover only for wanton, willful or gross negligence. *Lippman v. Ostrum,* 22 N. J. 14, 123 A. 2d 230 (1956).

denote the fact that the plaintiff is one who is being carried by another for hire. The word 'guest' is used to denote one whom the owner or possessor of a motor car or other vehicle invites or permits to ride with him as a gratuity, that is, without any financial return except such slight benefits as it is customary to extend as part of the ordinary courtesies of the road. Thus, one who rides in another's car does not cease to be a guest by paying the bridge or ferry tolls which it is the local custom for a guest to pay."

The same comment is repeated in Restatement, *Torts* 2d § 490 a (1965) at 546-47, as is the balance of the comment, not cited in *Moss v. Govan*:

"On the other hand, if there is a prior arrangement that there shall be a substantial sharing of the expenses, the host and guest relationship does not exist. The person so sharing expenses may be either a passenger or a participant in a joint enterprise."

On the facts, the court below *could* have found that Mr. Tracey was not a guest occupant. That it did not, may be explained by testimony which offered more than an intimation of the feckless nature of the enterprise. As Tracey told it in the damage suit:

"Q. * * * [D]id there come a time when you and your brother decided to go to Durham, North Carolina?
"A. Yes.

* * *

"Q. Did you have any conversation with your brother; decide to do anything?
"A. Yeah, we were sitting down talking and we decide we would go to North Carolina to see my sister for awhile.

* * *

"Q. And, how long had you intended to stay?

"A. We wasn't intended to stay maybe that night, something like that; go that night and come back the same day.

"Q. Now what time was it that all of you left?

"A. I guess it must have been around 7:30 or something like that, I guess."

At the hearing on the petition, Mrs. Bracey, in response to the question, "Did anyone have the right to tell you how to get to North Carolina, where you were going?" answered, "No, I guess not. They didn't know the road."

Against the backdrop of Mrs. Bracey's uncorroborated testimony that "James was supposed to bear the expenses," the court must have considered a combination of facts which stood out in stark relief: (i) the group set out on a trip of some 300 miles at 7:30 in the evening, intending, according to Mr. Tracey, to "go that night and come back the same day;" (ii) no one, possibly excepting Mrs. Bracey, knew the way, and (iii) gasoline must have been bought by someone at the very outset of the trip, but there is no evidence to support a finding that Mr. Tracey or Miss Ames paid for it.

The lower court had the advantage of hearing and seeing the witnesses and of determining their credibility. We cannot regard as clearly erroneous its finding that the appellants were guest occupants. Had the situation of the parties been reversed, Mrs. Bracey could not, on the facts found below, have recovered from the New Jersey Fund.

The appellants earnestly argue that the lower court took too narrow a view: that the test of qualification applied by Code Art. 66½, § 150 (g) by its very terms includes residents of states in which recourse "substantially similar" to that provided by the Maryland Fund would be offered to residents of Maryland. In sum, they would have us apply the test of substantial similarity to the purpose underlying the Fund, but not to the relief

which it affords. As we see it, the recourse available under the foreign statute can be substantially similar only if the state from which the non-resident comes would extend an equal benefit to a non-resident on the same facts. 61 C.J.S., *Motor Vehicles* § 563.3, Note 76.1 (1939, 1968 Supp.) ; Ward, *The Uninsured Motorist: National and International Protection Presently Available and Comparative Problems in Substantial Similarity*, 9 Buffalo L. Rev. 283 (1959-1960). If the situation had been reversed, we believe that New Jersey would have taken the same view. *Betz v. Director*, 27 N. J. 324, 142 A. 2d 632 (1958) ; *Kiczales v. Strelecki*, 103 N. J. Super. 257, 247 A. 2d 48 (1968) ; *Rudnick v. Bentler*, 66 N. J. Super. 224, 168 A. 2d 813 (1961).

As the New Jersey Superior Court said in *Kiczales v. Strelecki, supra*, 103 N. J. Super. at 262, 247 A. 2d at 51 :

> "Although the absence of general reciprocity precludes claims by any resident of a foreign jurisdiction lacking comparable legislation, it does not follow that the existence of general reciprocity thereby qualifies as claimants all residents of the foreign state which has the equivalent of our Fund. *Specific reciprocity is also required.* The two laws must be compared to determine whether there is similarity of *relief.*" (emphasis supplied).

The result which we have reached makes unnecessary a consideration of appellants' second contention, that there is no source from which recovery can be had, other than the Maryland Fund.

*Order affirmed, costs to be*
*paid by appellants.*